Ross ZWINGLE, Plaintiff,

v.

**TYSON'S FOODS, INC., a corporation, and Tyson's Pride of Oklahoma, Inc., a corporation, Defendants.**

Civ. No. 64-347.

United States District Court
W. D. Oklahoma.

June 7, 1965.

Gomer Smith, Jr., David Cook, Oklahoma City, Okl., for plaintiff.

Courtney C. Crouch of Crouch, Blair & Cypert, Springdale, Ark., John H. Cantrell, Lee B. Thompson and Ralph G. Thompson, of Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Okl., for defendant.

DAUGHERTY, District Judge.

An evidentiary hearing was held in the above matter in connection with the Special Appearance, Motion to Quash, Objection to Venue and Jurisdiction, filed herein by the defendant Tyson's Foods, Inc. Evidence was received by the Court from both sides of this controversy and briefs have been submitted and arguments heard from both sides.

It is the contention of the movant, the defendant, Tyson's Foods, Inc., that it is not subject to the venue and jurisdiction of this court, inasmuch as it is a foreign corporation situated in the State of Arkansas and is not "transacting business" in the State of Oklahoma. This defendant was served extraterritorially by the United States Marshal for the

Western District of Arkansas. It seems definite that the movant defendant was found in Arkansas for purposes of being served with process.

The plaintiff responds to the effect that the movant defendant is subject to the venue and jurisdiction of this court in this matter as it "transacts business" in the State of Oklahoma and for that reason it is capable of being sued in the State of Oklahoma and served extraterritorially in Arkansas where it is found.

Title 15 U.S.Code, § 15, provides that any person injured by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent. Title 15 U.S.Code, § 22, provides that any proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also any district where it may be found or transacts business.

The movant defendant corporation was not *found* in Oklahoma for venue purposes, and venue herein depends on whether or not said defendant *transacts business* in Oklahoma.

It appears from the evidence that the movant defendant is a parent corporation which wholly owns the other defendant herein, Tyson's Pride of Oklahoma, Inc., a subsidiary corporation of the movant defendant.

■ It is fundamental that the fact that a foreign parent company wholly owns a local subsidiary company does not thereby bring the parent company into the state of the local subsidiary company in the sense of transacting its own business there. People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Mebco Realty Holding Co. v. Warner Bros. Pictures, (D.C.N.J., 1942), 45 F.Supp. 340; Lawlor v. National Screen Service Corp., (D.C.Pa., 1950), 10 F.R.D. 123; Public Service Co. of New Mexico v. Federal Pac. Elec. Co., (D.C.New Mexico, 1962), 210 F.Supp. 1. Both sides at the hearing conceded that this is the law and that standing alone a foreign corporation is not transacting business in the state of a local wholly owned subsidiary corporation.

It is thus necessary to ascertain what is required over and above a foreign parent corporation wholly owning a local subsidiary corporation in order to support a finding that the parent corporation is transacting business in the state of the wholly owned local subsidiary.

■ The test appears to be set out in United States v. Scophony Corporation of America, et al., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, in the following language:

"* * * a corporation is engaged in transacting business in a district * * * if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character."

and:

"The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue."

It is undisputed that the movant defendant, the foreign parent corporation, does wholly own the other defendant as a subsidiary corporation. In addition, the foreign parent corporation owns a number of other subsidiary corporations, most of which are situated in the State of Arkansas but some few are located in the States of Oklahoma and Texas. Some, however, are not wholly owned, and a local manager or interest owns a portion.

It seems that the movant defendant corporation has a board of directors consisting of five members, three of whom also constitute the board of directors of the local subsidiary corporation, the other defendant herein. The local subsidiary corporation is operated by a general manager, who previously had sold his local business to the parent corporation which then formed the local subsidiary with said general manager owning stock options up to one-third of the stock of the local subsidiary corporation.

It appears from the evidence that the parent corporation, during the period involved herein, obtained from the Oklahoma State Department of Agriculture a permit and, by virtue thereof, on occasions purchased tax stamps from the Department of Agriculture of the State of Oklahoma to be affixed, as required by Oklahoma law, on eggs or cartons containing eggs shipped into the State of Oklahoma and sold therein. (Claimed to have been done in error and now corrected). These stamps were distributed by the parent corporation to its subsidiary corporations in Arkansas, who used the stamps on eggs they sold and shipped to Oklahoma purchasers, and they were charged by some means for the cost of and stamps. It seems that the parent corporation carried a special tax account from which the funds came to buy these stamps and the same was so set up for accounting purposes. From the evidence it does not appear that the parent corporation either shipped any eggs itself into Oklahoma or used the stamps itself on any eggs shipped to the State of Oklahoma.

The evidence discloses that over a three-year period (September, 1962—April, 1965) the local Oklahoma subsidiary corporation made total purchases of eggs, poultry, and supplies of approximately $7,500,000.00 and purchased from an Arkansas subsidiary corporation of the movant defendant approximately one-third or $2,500,000.00 thereof. Eggs alone purchased from the Arkansas subsidiary corporation amounted to only about 5% of the total purchases made by the local subsidiary corporation during this period. It seems that the local subsidiary corporation during said period made out-of-state purchases of eggs and poultry of approximately $7,116,000.00, of which approximately $2,500,000.00 were purchased from the above mentioned Arkansas subsidiary of the movant defendant with the rest of the purchases being made from other egg and poultry concerns, in Arkansas, Kansas and Missouri for the most part. Instate purchases by the local subsidiary

corporation amounted to about $462,000.00. It seems that the local manager set the price of eggs he sold based upon market conditions and the cost of the eggs to him. This manager testified that his mission was to buy and sell poultry and eggs and to make a profit on the transactions; that he was responsible only to his own board of directors.

It further appears from the evidence that the movant defendant owns no property in Oklahoma, sends no trucks here, pays no taxes in Oklahoma (except in connection with the above mentioned permit fee and stamps), sells no property in Oklahoma, and has no office or warehouse in Oklahoma. Also, it has no registered agent in Oklahoma and its corporate name does not appear on the labels of any eggs sent into Oklahoma. In fact, the movant defendant does not produce eggs and does not process nor ship eggs. It seems that the movant defendant has a management meeting each Monday morning, or nearly so, but no representative of the local subsidiary corporation, the co-defendant herein, attends these management meetings. It appears that the local subsidiary corporation herein is independently audited as to its operations. It also appears that the parent corporation, in a prospectus approved by the SEC in connection with an offering of its stock to the public, reported its operation by consolidating the activities of all of its wholly owned subsidiaries for a total picture of the parent organization. It further appears that the Oklahoma subsidiary corporation has paid no profits to the parent organization, at least to the present time. It would appear that any profits made, however, on the decision of the local board of directors, could or would be made to the parent organization unless the above mentioned stock option is exercised in which event a part of any profits would be payable to the local manager.

There is an absence of any evidence indicating that the foreign parent organization controls or directs the local subsidiary corporation in its everyday business or operations. It appears that the

general manager, in fact, is in active and direct control of the business and makes very little resort to the board of directors, if any. He buys and sells where he pleases and sets his prices. At least no evidence was submitted as to what decisions the local board of directors or any other board or any board member may have made in connection with the operation of the business. It thus seems that the local subsidiary corporation was operated and directed in its everyday business and operations by a general manager who had stock options on a third of the stock of the company. It is true that he buys some eggs and poultry from a brother subsidiary corporation in Arkansas, but there is no evidence that he is required or directed to do so. He makes purchases of similar products from many other egg and poultry houses both in Arkansas and Oklahoma and in other states. The vice-president of the parent organization testified that he had not been in Oklahoma for the past two years. He is a member of the board of directors of the local subsidiary corporation.

It thus appears that, while the local subsidiary corporation is wholly owned by the parent Arkansas corporation, the parent Arkansas corporation does not exercise, according to the evidence, any measure of control or direction over the everyday business and operations of the local subsidiary corporation. It does not appear that the fact that the local subsidiary corporation buys some of its eggs and poultry from a brother subsidiary corporation in Arkansas would provide the necessary element of control inasmuch as there is no requirement or direction disclosed that the local subsidiary corporation must do so to any extent. It is natural for friends to trade with friends and the same would seem to apply to a subsidiary corporation buying from a brother subsidiary corporation when possible and to the extent possible, provided the price is right and a market is available. Moreover, the stamp purchases in Oklahoma by the parent corporation cannot amount to transacting business of a substantial character.

In this state of the evidence the Court reaches the conclusions that (1) the parties admit that the sole fact of wholly owning a subsidiary Oklahoma corporation will not cause the parent Arkansas corporation to be transacting business in Oklahoma; (2) under the evidence before the Court it does not appear that the foreign parent corporation exercises any measure of control or direction over the everyday business activities and operations of the local subsidiary corporation; and (3) the purchase of egg stamps in Oklahoma by the parent corporation and the consolidated prospectus do not amount to the transacting of business in Oklahoma of any substantial character. The Court, therefore, finds that the movant defendant is not transacting business in the State of Oklahoma within the meaning of that term as set out in the provisions of the antitrust law above mentioned and under the pertinent authorities. Its motion then must be and the same is hereby sustained.

Accordingly, the summons is quashed and the complaint is dismissed as to the defendant, Tyson's Foods, Inc.