**C. C. P. CORPORATION, an Illinois corporation, Plaintiff,**

v.

**WYNN OIL COMPANY, a California corp., and Valentine Voisard, Defendants.**

**No. 71 C 1538.**

United States District Court,
N. D. Illinois, E. D.

Feb. 20, 1973.

Altheimer, Gray, Naiburg & Strasburger, Chicago, Ill., for plaintiff.

Baker & McKenzie, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on defendant Wynn Oil Company's motion objecting to personal jurisdiction and venue under Count I of the Complaint.

The plaintiff, C.C.P. Corporation ("CCP"), is an Illinois corporation with its principal place of business in the State of Illinois. The defendants are Wynn Oil Company ("Wynn"), a California corporation having its principal place of business in the State of California, and Valentine Voisard. Plaintiff alleges that Wynn transacts business in the Northern District of Illinois.

The Complaint alleges three causes of action in three separate counts. Count I, which is the subject matter of the instant motion, involves a claim for treble damages under Section 4 of the Clayton Act (15 U.S.C. § 15) and Section 1 of the Sherman Act (15 U.S.C. § 1). The antitrust violations alleged are that plaintiff's business and property were damaged through Wynn's terminating plaintiff as a Wynn Oil Company distributor and preventing plaintiff from acting as a distributor of competitive

products. Jurisdiction is based on 28 U.S.C. § 1337.[1]

The relevant facts, *inter alia,* are as follows. Wynn is a manufacturer of lubricants, greases, oils and similar products for automotive and industrial use. It is the proprietor of the trademark and tradename "Wynn" as used in connection with such products. It sells and ships substantial quantities of such products in interstate commerce to distributors and others located throughout the United States. CCP was incorporated for the express purpose of becoming a Wynn distributor in several counties in the Northern District of Illinois and was required by Wynn to have initial capital of $50,000.00. The plaintiff became a Wynn distributor pursuant to an agreement executed by Wynn on January 22, 1968 and continued as such distributor until approximately the end of June 1970. During that time, defendant Valentine Voisard was plaintiff's sales manager.

The Complaint alleges that during the spring 1970, Wynn and Voisard entered an agreement, combination and conspiracy to eliminate plaintiff as a distributor of Wynn products and to prevent plaintiff from continuing in business as a distributor (including as a distributor of products competitive with Wynn's products), which effectively put plaintiff out of business. The Complaint further alleges that defendants agreed that Voisard would leave plaintiff's employ and would participate with Wynn in organizing and operating a new distributorship to be financed by Wynn to take over plaintiff's distributorship business; that Wynn would cancel plaintiff as a distributor; and that Voisard would seek and induce plaintiff's sales representatives to enter the service of the new distributorship. In their answers, defendants deny these allegations of conspiratorial conduct.

Wynn's officers and executives set up the operations in Illinois of Wynn's wholly owned subsidiary, Friction Proofing Supply Inc. This subsidiary became qualified to do business in Illinois on July 9, 1970 and withdrew from Illinois on June 17, 1971. Wynn has never been licensed to do business in Illinois and at the time the instant action was filed did not have a subsidiary or resident agent for process present in the Northern District of Illinois.

The defendant Wynn in support of the instant motion contends:

(1) Wynn does not transact business in this District pursuant to the requirements for venue under Section 12 of the Clayton Act (15 U.S.C. § 22).

(A) Wynn's distributors in Illinois have a principal to principal relationship to Wynn. Thus the defendant Wynn exerts no control over its distributors and the business activity of the distributors should not be construed as that of the defendant Wynn.

(B) The defendant is not transacting business in this District through its distributors or through the sale of its products by the distributors.

(2) The personal jurisdiction and venue objection raised by Wynn are not cured by the general venue provision of 28 U.S.C. § 1391(b).

The plaintiff in opposition to the instant motion contends:

(1) Venue and hence personal jurisdiction are proper in the Northern District of Illinois under Section 12 of the Clayton Act since Wynn transacted business in the Northern District of Illinois.

1. Count II sets forth a claim for unfair competition and tortious interference with plaintiff's business, arising out of the same fact situation stated in Count I. Count

III sets forth a claim against defendant Wynn Oil Company alone for wrongful cancellation or termination of the distributorship.

(2) Venue and hence personal jurisdiction are proper in the Northern District of Illinois under 28 U.S.C. § 1391(b).

It is the opinion of this Court that the defendant Wynn transacted business in the Northern District of Illinois for the purpose of venue and jurisdiction under Section 12 of the Clayton Act, 15 U.S.C. § 22.

■■ Venue in private anti-trust actions against a corporate defendant is governed by the special venue provision of Section 12 of the Clayton Act (15 U.S.C. § 22) which provides:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Accordingly, if venue in the forum district was proper, extraterritorial service upon the defendant Wynn at its place of inhabitance was permissible. State of Illinois v. Harper & Row Publishers, Inc., 308 F.Supp. 1207, 1209 (N.D.Ill. 1969). A corporation is said to be an inhabitant of the state of its incorporation. Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400 (1st Cir., 1965), cert. denied 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966); Philadelphia Housing Authority v. American Radiator & Standard Sanitary, 291 F.Supp. 252 (E.D.Pa.

1968). The defendant Wynn is not an inhabitant of Illinois nor this District.

■ The word "found" as used in Section 12 of the Clayton Act has been defined to mean "presence and 'continuous local activities' within the District". Stern Fish Company v. Century Seafoods, Inc., 254 F.Supp. 151 (E.D.Pa. 1966); Philadelphia Housing Authority, *supra.* The defendant Wynn is not "found" within the meaning of the statute in the Northern District of Illinois.

■ The term "transacts business" has been defined to mean the practical everyday business or commercial concept of doing or carrying on business of any substantial character. United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). Courts have found that a corporation "transacts business" within their forum when a substantial business activity is done within the forum with continuity of character, regularity, contemporaneousness with time of service and not looking toward cessation of business. Commonwealth Edison Co. v. Federal Pacific Electric Co., 208 F.Supp. 936 (N.D.Ill.1962); State of Illinois v. Harper & Row Publishers, Inc., *supra.* Courts have found the following activities, *inter alia,* to be significant in determining whether a defendant corporation has transacted business within the forum under Section 12 of the Clayton Act:

(1) Good will tours, advertising letters and mail order catalogues;[2]

(2) Solicitation of sales and percentage of total sales shipped into the district;[3]

2. Wentling v. Popular Science Publishing Company, 176 F.Supp. 652 (M.D.Pa. 1959); School District of Philadelphia v. Harper Row Publishers, Inc., 267 F.Supp. 1006 (E.D.Pa.1967).

3. Hansen Packing Co. v. Armour & Co., 16 F.Supp. 784 (D.C.N.Y.1936)—2.49% of total business amounting to $4,000,000 transacted in the state of New York; School District of Philadelphia, Commonwealth of Pennsylvania v. Kurtz Bros. et

al., 240 F.Supp. 361 (E.D.Pa.1956)— 2.7% of total sales over a three year period; Cusick v. N. V. Nederlandsche Combinatie, 304 F.Supp. 301, 303 (E.D. Pa.1969)—sales of $12,047.00 to $84,493.-00 together with three visits per year into the state; State of Illinois v. Harper & Row Publishers, Inc., 308 F.Supp. 1207 (N.D.Ill.1969)—sales of $14,926.00 by one defendant and $8,665.00 by another defendant with occasional visits by sales representatives; ABC Great States, Inc. v. Globe Ticket Co., 310 F.Supp. 739

(3) Substantial dollar volume of sales delivered into the district;[4]

(4) Substantial purchases of materials and equipment.[5]

[5] The defendant Wynn's answers to interrogatories reveal that it has conducted significant business activities in the Northern District of Illinois during the 1½ year period preceding institution of this action on June 28, 1971. Wynn sales in Illinois were $578,510.53 (see Supplementary Answer to Interrogatory 7(a)). During the six months immediately preceding the Complaint, its sales in Illinois exceeded $196,000.00 (Original Answer to Interrogatory 7(a)).[6] During this 1½ year period Wynn purchased materials and equipment in Illinois in the amount of $95,857.90 (Supplementary Answer to Interrogatory 7(b)). Wynn also spent $26,211.30 on advertising in Illinois and spent nearly $5,000.00 for other services in Illinois (Supplementary Answer to Interrogatory 7(c) and (d)). Also Wynn spent $29,211.22 for promotional materials which it sent into this state, and an unspecified amount was spent for advertising purchased outside of Illinois and sent in and disseminated here (Supplementary Answer to Interrogatories 8(b) and (c)). Nine different officers and executives made sixty-six trips into Illinois at least forty of which were for business purposes (Supplementary Answer to Interrogatory 6). Wynn has demonstrated by its answers to interrogatories that it has performed sufficient activities in the Northern District of Illinois to be termed to have transacted business in this District pursuant to 15 U.S.C. § 22. Thus, it is proper for Wynn to be subject to this Court's venue and personal jurisdiction.

Since there is venue under Section 12 of the Clayton Act the Court does not have to reach the question of whether there is venue pursuant to 28 U.S.C. § 1391.

In passing, it is interesting to note that contrary to the contentions of the defendants, when Congress has enacted a liberal special venue statute, enlarging venue such as in Section 12 of the Clayton Act, the general venue provisions are still available to supplement the special venue provisions, absent a manifestation by the Congress of a contrary restrictive intent. ABC Great States, Inc. v. Globe Ticket Co., *supra;* Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252 (E.D.Pa.1968); Adams Dairy Co. v. National Dairy Products Corp., 293 F.Supp. 1135 (W.D. Mo.1968); California Clippers, Inc. v. United States Soccer Football Ass'n, 314 F.Supp. 1057 (N.D.Cal.1970). See generally Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966).

Accordingly, it is hereby ordered that defendant Wynn's motion is denied.

(N.D.Ill.1970)—average annual sales of $14,500.00 and average annual purchases of less than $1,000.00.

4. Sunbury Wire Rope Mfg. Co. v. United States Steel Corp. et al., 129 F.Supp. 425 (E.D.Pa.1955)—$600,000 out of a total yearly volume of $100,000,000 was found to be substantial.

5. Crusader Marine Corporation v. Chrysler Corporation, 281 F.Supp. 802 (E.D.Mich., 1968).

6. The defendant in an attempt to deemphasize its business contacts with the Northern District of Illinois contends that all sales were accepted outside of Illinois and all shipments are F.O.B. at states other than the forum. However, § 22 is not controlled by hair splitting legal technicalities. See Commonwealth Edison Co. v. Federal Pacific Electric Co., *supra;* State of Illinois v. Harper & Row Publishers, Inc., 308 F.Supp. 1207 (N.D.Ill. 1969).