### In re CHICKEN ANTITRUST LITIGATION.

### Civ. A. No. C74–2454A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 24, 1975.

Emmet J. Bondurant, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., Edward L. Savell, Savell, Williams, Cox & Angel, Atlanta, Ga., for plaintiffs.

Sidney O. Smith, Jr., Michael A. Doyle, Alston, Miller & Gaines, Atlanta, Ga., for National Broiler Marketing Association, A. C. Smith Milling, B & P Poultry Co., Inc., Burnett Produce Co., Cagle's, Inc., Claxton Poultry Co., Inc., Dent Poultry Co., Fieldale Corp., Gold Kist Inc., Mar-Jac, Inc., MFC Services (AAL), O. K. Processors, Inc., Pilgrim Industries, Inc., and Poultry Products Co., Inc. and Purnell's Pride, Inc. and DeWitt Farms Corp.

Charles L. Gowen, Jack H. Watson, Jr., Atlanta, Ga., for H & H Poultry Co., Hudson Foods, Inc., Marell Poultry Co., Marshall Durbin Food Corp., Marshall Durbin Farms, Inc., Peterson Farms, Inc., Ralston Purina Co., Inc., Southeastern Hatcheries, Stratford of Texas, Inc., Tyson Foods, Inc., Valmac Industries, Inc., Heublein, Inc.

Harold L. Russell, Gambrell, Russell, Killorin, Wade & Forbes, Atlanta, Ga., for Cargill, Inc., Central Soya Co., Inc., ConAgra, Inc., Federal Company, The Pillsbury Co., and Townsend's, Inc.

Joseph Lefkoff, Lefkoff & Hanes, Atlanta, Ga., for Allied Mills, Inc.

Edward E. Dorsey, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Wilson & Co.

William Hames, Sutherland, Asbill & Brennan, Atlanta, Ga., for Perdue Farms, Inc.

Allen I. Hirsch, Arnall, Golden & Gregory, Atlanta, Ga., for Kane-Miller Corp.

## ORDER

O'KELLEY, District Judge.

These consolidated antitrust actions are before the court for ruling on numerous motions. Some of these motions relate to all of the actions (these will be dealt with collectively under the subhead "C 74–2454 A") and some of the motions relate to one or more of the actions separately (these will be dealt with under the appropriate docket control number).

### C 74–2454 A

Motion to Compel

Plaintiffs move for an order compelling defendants Dent Poultry Co., Inc., Claxton Poultry Co., Inc., Purnell's Pride, Inc., A. C. Milling Company,

Southeastern Hatcheries and Heublein, Inc. to answer interrogatories 6, 7, 14(c), 14(d), 15, 17, 18, 21, 23 and 24 of plaintiff's class action interrogatories. This motion deals with identical issues dealt with in this court's order of September 29, 1975. For the same reasons as appear in that order, the motion to compel is GRANTED as to interrogatories 6 and 7 and is DENIED as to interrogatories 14(c), 14(d), 15, 17, 18, 21, 23 and 24, except for that part of interrogatory 24 which seeks the identity of documents describing the manner in which purchases of broilers are made and the marketing of broilers. Defendants are directed to answer so much of interrogatory 24 that does not deal with pricing. These answers are to be filed within 20 days of the date of this order.

Plaintiffs move to compel the defendant Townsends, Inc. to answer venue interrogatories 6 and 7. These interrogatories seek information regarding instances in which Townsends "either sold, shipped or provided products, equipment, or services or in which [Townsends] purchased or received products, equipment, or services from persons outside the Northern District of Georgia, but in which products, equipment, or services were shipped to or from, delivered to or from, or provided in or from the Northern District of Georgia . . . ." Townsends contends that the mere receipt of goods which may at one time have been shipped from the forum state cannot constitute transacting business. Townsends misunderstands the import of the interrogatories. This court understands the interrogatories to seek information about instances not where goods were shipped from Georgia to some person or concern, who, in turn, sold the goods to Townsends as Townsends contends but, rather, where Townsends orders goods from a company or a salesman outside the district but the goods

ordered are shipped to Townsends from the selling company's facilities within this district. The same interpretation would also apply to purchases.

■ As to the relevancy of these interrogatories, this court is of the opinion that while such transactions may not alone constitute transacting business, they are certainly relevant for this court to consider in viewing the defendants' overall contact with this district. Accordingly, plaintiff's motion to compel is granted; Townsends is directed to fully answer venue interrogatories 6 and 7 within 20 days of the date of this order.

Venue Motions

This court will now consider nine (9) presently pending motions[1] to dismiss the complaints pursuant to Fed.R.Civ.P. 12(b)(2), (3), and (5) for improper venue, lack of personal jurisdiction and insufficient service of process. These motions were earlier deferred pending discovery going to the venue issue; such discovery is now complete, and the motions are ripe for a decision.

■ The Clayton Act has special venue provisions for antitrust actions, 15 U.S.C. §§ 15 and 22, in addition to and supplemental to the general venue statutes, 28 U.S.C. §§ 1391 and 1392. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides in relevant part:

Any person who shall be injured . . by reason of . . . the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent . . . .

Section 12 of the Clayton Act, 15 U.S.C. § 22 [hereinafter sometimes referred to as "§ 22"] deals with venue for corporate defendants; it provides in pertinent part:

---

1. Originally there were seventeen moving defendants. This court denied the motions of Dent Poultry Co., Inc. and Claxton Poultry Co. by order dated June 18, 1975. Purnell's Pride, Poultry Products Co., Inc., O. K. Foods, Inc. and Marshall Durbin Farms Corporation have

withdrawn their motions to dismiss. It appears that all discovery has not been completed with respect to the motions of Townsends, Inc. and Marshall Durbin Foods Corporation, thus no ruling is made on them at this time.

> Any suit . . . under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or *transacts business*; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

(emphasis supplied). The present motions are primarily concerned with that provision of § 22 which provides for venue in any district where the defendant transacts business. In several instances, plaintiffs also rely on that portion of the general venue statute, 28 U.S.C. § 1391, which provides for suit in the district "in which the claim arose." If the defendants are found to come within the "transacts business" provision in § 22, then the nationwide service of process provision in § 22 would allow service in the district where the defendant is either an inhabitant or where it can be found.

The term "transacts business" was added by Congress in 1914 with the clear intention to broaden venue in antitrust cases so as to enlarge the jurisdiction of the various federal district courts and to broaden the choices of forums available to plaintiffs in antitrust cases. *United States v. National City Lines,* 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948); *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). The "transacts business" test has been uniformly held to require less than the "doing of business," "carry on business," or "found" tests used in some venue statutes. *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *Commonwealth Edison Co. v. Federal Pacific Electric Co.,* 208 F.Supp. 936 (N.D.Ill. 1962). The general test for transacting business is whether, viewed in the practical, everyday business concept of carrying on business, the defendant transacts business of a substantial character within the district in the ordinary and usual manner. *United States v. Scophony Corp. of America,* 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). The primary indicator in determining the substantiality of the business is to view the dollar amount of business transacted in the district objectively from the standpoint of the average businessman rather than from the standpoint of a large corporation and to view this volume without reference to or comparison with the total volume of business of the corporation. *Green v. U. S. Chewing Gum Mfg. Co.,* 224 F.2d 369 (5th Cir. 1955); *Fashion Two Twenty, Inc. v. Steinberg,* 339 F.Supp. 836 (E.D.N.Y. 1971); *National Auto Brokers Corp. v. General Motors Corp.,* 332 F.Supp. 280 (S.D.N.Y.1971). There is no singular definitive test for transacting business, but there must be "a qualitative and a quantitative analysis of the contacts between the district and the corporation over which venue is sought." *Lippa & Co. v. Lenox, Inc.,* 305 F.Supp. 175 (D.Vt.1969). Venue under 15 U.S.C. § 22 is not controlled by hairsplitting technicalities; therefore, sales accepted outside a district and shipped f. o. b. a state outside the district but delivered within the district are considered for venue purposes. *C.C.P. Corp. v. Wynn Oil Co.,* 354 F.Supp. 1275 (N.D.Ill.1973); *Illinois v. Harper & Row Publishers Inc.,* 308 F.Supp. 1207 (N.D.Ill.1969); *Commonwealth Edison Co. v. Federal Pacific Electric Co.,* 208 F.Supp. 936 (N.D.Ill. 1962). There must generally be substantial business activity of a continuous and regular basis, *C.C.P. Corp. v. Wynn Oil Co.,* 354 F.Supp. 1275 (N.D.Ill.1973); however, it does not always have to be continuous; a single act can be enough to make venue proper although normally one act will not be enough unless such act is related to the cause of action. *Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Ass'n,* 344 F.2d 860 (9th Cir. 1965); *Pacific Tobacco Corp. v. American Tobacco Co.,* 338 F.Supp. 842 (D.Or.1972). It is difficult to pinpoint any single test as to the dollar amount or percentage of the transactions required within the district—an individual

unsolicited sale by a small company amounting to a large percentage of its total sales might not amount to transacting business whereas a continuous series of solicited sales over a long period of time amounting to a small percentage of total sales might be transacting business. *School District of Philadelphia v. Kurtz Bros.*, 240 F.Supp. 361 (E.D.Pa.1965). In viewing the volume of business to determine whether the defendant transacts business, the transactions do not have to be related to the cause of action or the subject matter of the suit.[2] *McCrory Corp. v. Cloth World, Inc.*, 378 F.Supp. 322 (S.D.N.Y.1974); *National Auto Brokers Corp. v. General Motors Corp.*, 332 F.Supp. 280 (S.D.N.Y.1971); *Crusader Marine Corp. v. Chrysler Corp.*, 281 F.Supp. 802 (E.D.Mich.1968); *United States v. Burlington Industries, Inc.*, 247 F.Supp. 185 (S.D.N.Y.1965).

In evaluating the substantiality of the defendants' business within the district, the analysis is not limited to sales. Purchases made by the defendants within the district are also indicia of transacting business. As stated by the court in *Crusader Marine Corp. v. Chrysler Corp.*, 281 F.Supp. 802, 804 (E.D.Mich.1968):

> To hold that purchasing is to be excluded from the definition of "transacting business" would not be realistic, for it is obvious that in any line of commerce purchasing may very well be as important to business as the selling of commodities . . . .

*See also McCrory Corp. v. Cloth World Inc.*, 378 F.Supp. 322 (S.D.N.Y.1974); *Fashion Two Twenty Inc. v. Steinberg*, 339 F.Supp. 836 (E.D.N.Y.1971); *Illinois v. Harper & Row Publishers, Inc.*, 308 F.Supp. 1207 (N.D.Ill.1969); *cf. Eastern*

*Pre-Cast Corp. v. Giant Portland Cement Co.*, 311 F.Supp. 896 (E.D.Pa.1970); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252 (E.D.Pa.1968). Purchases have also been considered in connection with sales in establishing that a corporation is transacting business within a district. *Stern Fish Co. v. Century Seafoods, Inc.*, 254 F.Supp. 151 (E.D.Pa. 1966); *United States v. Burlington Industries, Inc.*, 247 F.Supp. 185 (S.D.N.Y. 1965). Because the question is whether or not the corporation transacts business and not whether the particular transaction of business gives rise to the cause of action, the purchases also do not have to be concerned with the claim to be relevant in establishing venue. *Crusader Marine Corp. v. Chrysler Corp.*, 281 F.Supp. 802 (E.D.Mich.1968).

Given that the defendants must be found to be transacting business within this district the question arises as to the time when the defendants must be found to transact such business within the forum. On the surface, there appears to be some conflict between the cases on this point; some view the critical time for establishing venue as being the time the cause of action accrued; *see, e. g., Eastland Construction Co. v. Keasbey & Mattison Co.*, 358 F.2d 777 (9th Cir. 1966); *Fulton Co. v. Beaird-Poulan, Inc.*, 54 F.R.D. 604 (N.D.Miss. 1972); *R. J. Coulter Funeral Home, Inc. v. National Burial Ins. Co.*, 192 F.Supp. 522 (E.D.Tenn.1960); *Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc.*, 140 F.Supp. 401 (E.D.Va.1954); while others view the critical time as being the time the suit is commenced; *see, e. g., Sunbury Wire Rope Mfg. Co. v. United States Steel Corp.*, 230 F.2d 511 (3d Cir. 1956); *C.C.P. Corp. v. Wynn Oil Co.*, 354

---

**2.** References to the importance of the "type product involved" in *Albert Levine Associates v. Bertoni & Cotti*, 309 F.Supp. 456 (S.D.N.Y. 1970), did not infer that the product involved had to be a basis of the cause of action. *See also School District of Philadelphia v. Kurtz Bros.*, 240 F.Supp. 361 (E.D.Pa.1965). Rather, the type of product was important in interpreting the nature of the transaction as an isolat-

ed, unsolicited transaction as opposed to continuous and regular transactions. One court in a non-antitrust situation stated that where the connection with the forum state also was related to the cause of action, a double substantial connection would exist, strengthening the argument to make the defendant subject to suit. *See L. D. Reeder Contractors v. Higgins Industries Inc.*, 265 F.2d 768 (9th Cir. 1959).

F.Supp. 1275 (N.D.Ill.1973); *Illinois v. Harper & Row Publishers, Inc.,* 308 F.Supp. 1207 (N.D.Ill.1969); *Stern Fish Co. v. Century Seafoods, Inc.,* 254 F.Supp. 151 (E.D.Pa.1966); *Philadelphia v. Morton Salt Co.,* 248 F.Supp. 506 (E.D. Pa.1965); *School Dist. of Philadelphia v. Kurtz Bros.,* 240 F.Supp. 361 (E.D.Pa. 1965); *Commonwealth Edison Co. v. Federal Pacific Electric Co.,* 208 F.Supp. 936 (N.D.Ill.1962). Insofar as the motions in the cases *sub judice* are concerned, this court is of the opinion that any conflict between the above cases is more illusionary than real. The cases referred to above which held that the critical time is the time the cause of action arose dealt with situations where the defendants transacted business within their respective districts; where the cause of action for the antitrust suit arose from such transactions of business and where the defendants had either withdrawn from the district or ceased doing business in that district at the time the suit was brought. The holdings in these cases might well be correct with respect to the particular factual situation in deriving the intent of Congress; *see Eastland Construction Co. v. Keasbey & Mattison Co.,* 358 F.2d 777 (9th Cir. 1966); however, in the present case we do not deal with a similar situation. Here we deal with a cause of action which is not necessarily directly related to the various transactions of business within this district. In other words, the plaintiffs in this case are not relying on the fact that they were all injured in this district by virtue of the defendants' transactions of business in this district. Rather, they are relying on the fact that these defendants are and have been transacting business in this district so as to make them amenable to suit here pursuant to the express wording of 15 U.S.C. § 22. Accordingly, based on the allegations of the complaint, the defendants must be transacting business in this district at the time the suit was filed, for them to be subject to suit. Of course, this does not mean that earlier transactions by the defendants in this district are irrelevant. Rather, such earlier transactions are clearly relevant and are important considerations in determining the nature and continuity of the defendants' transactions in this district.

As to some of the defendants, plaintiffs rely on the fact that they have subsidiaries transacting business within this district. To be successful, the burden is on the plaintiffs to establish that the subsidiary is essentially the alter ego or the agent of the parent corporation which dictates and controls the daily business affairs of such subsidiary. *San Antonio Telephone Co., Inc. v. American Telephone & Telegraph Co.,* 499 F.2d 349 (5th Cir. 1974); *O.S.C. Corp. v. Toshiba America, Inc.,* 491 F.2d 1064 (9th Cir. 1974); *cf. Phillip Gall & Son v. Garcia Corp.,* 340 F.Supp. 1255 (E.D.Ky.1972). In a supplemental brief, plaintiffs have cited several district court opinions holding that the day-to-day control test referred to above is no longer the test that is to be applied in antitrust cases but that instead the parent corporation only needs to have the ability to influence and control the subsidiary for the parent to be subject to venue because of the subsidiary's transacting business within the district. While there might be a certain amount of appeal in the reasoning of these cases, this court is of the opinion that it is bound by the decision of the Fifth Circuit in *San Antonio Telephone Co., Inc. v. American Telephone & Telegraph Co.,* 499 F.2d 349 (5th Cir. 1974), which explicitly referred to the day-to-day test in determining whether or not venue was proper as to a parent by virtue of the contacts of its subsidiary. Plaintiffs argue that *San Antonio Telephone Co., Inc.* dealt with "a particularly extreme situation and a strained argument by plaintiff in support of venue in the Western District of Texas." What plaintiffs fail to recognize is that however extreme the factual situation was in that case and however strained the plaintiffs argument in support of venue was in that case, the question involved was the legal test to be applied in determining whether or not venue was proper as to a parent corporation by vir-

tue of the transactions of its subsidiary and the Fifth Circuit chose to apply the day-to-day control test. It could have easily disposed of the issue by applying the test which plaintiffs seek this court to apply in this case; however, since the Fifth Circuit chose to apply the day-to-day control test, this court is bound to apply that same test. Where the subsidiary maintains its separate entity and carries on its activities without having its daily business affairs controlled by the parent so that it does not appear to be merely the parent's agent, the presence or transactions of the subsidiary will not render the parent corporation transacting business in the district under 15 U.S.C. § 22. If the plaintiffs are successful in establishing that the transactions of a subsidiary should be considered as the transactions of the parent, then the same test discussed above will be applied in determining whether or not the subsidiaries (and thus the parents) are transacting business within this district.

The court will now consider the motions of the individual defendants.

### Hudson Foods, Inc.

■ On the basis of the facts of record the defendant Hudson Foods, Inc. clearly transacts business in this district. The answers to interrogatories indicate that between late 1973 and early 1975 Hudson made 19 sales to AJC International, Inc. of Atlanta with invoices sent to Atlanta totaling some $239,313.10. In addition, Hudson had purchases during the period 1972–1975 from this district totaling some $274,000.00.[3] Hudson attempts to avoid the above sales by arguing that the transactions were initiated in Arkansas from a representative of AJC International, Inc., that the products were shipped f. o. b. Rogers, Arkansas, and delivered to Los Angeles, California, New Orleans, Louisiana, or Miami

for loading on ships bound for foreign countries. Hudson argues that since the products were not delivered in this district, Hudson was not transacting business in this district. It is interesting to note that another defendant, O. K. Foods, Inc. has made somewhat of a reverse argument.[4] O. K. contended that sales solicited, negotiated, and executed outside the district with a company headquartered outside the district and delivered into this district at the direction of the purchaser were not relevant. O. K. argued that the nature of the transactions outside the state acted to prevent such transactions from being considered in determining whether it was transacting business within this district and argued that the mere fact that the products were delivered into this district could not make the transactions relevant considerations. In contrast, Hudson contends that the place of delivery is vitally important and contends that the fact that the products were sold to an Atlanta company, invoiced in Atlanta and presumably paid from Atlanta could not make them relevant considerations in determining whether it is transacting business within the district since the products were delivered elsewhere.

■ It has long been held that the decision by the Supreme court in *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927) interpreted the intent of the "transacts business" language of 15 U.S.C. § 22 as being designed to substitute ordinary, practical business conceptions for what had been "hair-splitting legal technicalities." *United States v. Scophony Corp. of America,* 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); *Green v. U. S. Chewing Gum Mfg. Co.,* 224 F.2d 369 (5th Cir. 1955). Hudson would have us return to such concepts. This court is of the opinion that all contacts of defendants with

---

**3.** This court has just been informed by counsel for Hudson that additional purchases from this district by Hudson from Fieldale Corporation have been discovered. Supplemental answers are being prepared; however, in view of this

court's findings above, there is no need to withhold ruling until such answers are filed.

**4.** O. K. Foods, Inc. has now withdrawn its motion to dismiss.

this district are relevant factors to be considered in determining whether or not the defendants are transacting business within this district. While they may not alone be determinative of the issue, *cf. Guernsey-Muskingum Electric Co-op v. Federal Pacific Electric Co.,* 221 F.Supp. 409 (S.D.Ohio 1962), they are certainly relevant factors to be considered with other contacts of the defendant. Whether or not the above sales transactions would be sufficient standing alone to render Hudson's transacting business within this district, this court does not have to consider because those sales coupled with purchases within this district of some $274,000.00 over a four-year period sufficiently establish that Hudson was transacting business so as to come within the venue provisions of 15 U.S.C. § 22.

### Peterson Farms

 Peterson had sales of breeder stock in this district from 1970 through 1974 in a total amount of over $652,123 or over $130,000 in sales per year. Peterson also had a sales representative located in Dalton, Georgia. Peterson argues (1) that its sales have never constituted as much as 1% of its total sales; (2) that the sales have been only of breeder stock which are not the subject matter of this action; and (3) that the sales representative was not stationed in Dalton but that the Dalton location was the salesman's own choice as his place of residence. This court finds no merit in Peterson's arguments. Viewed from the practical, everyday standpoint of the average businessman rather than from that of a large corporation, over $650,000 in sales over a five-year period is clearly substantial. The fact that this volume of sales amounts to less than 1% of its total sales is not a determining factor. *Green v. U. S. Chewing Gum Mfg. Co.,* 224 F.2d 369 (5th Cir. 1955); *Lippa & Co. v. Lenox, Inc.,* 305 F.Supp. 175 (D.Vt. 1969); *Lower Colorado River Authority v. Westinghouse Elec. Corp.,* 219 F.Supp. 743 (W.D.Tex.1963); *Sunbury Wire Rope Mfg. Co. v. United States Steel Corp.,*

129 F.Supp. 425 (E.D.Pa.1955); *cf. School Dist. of Philadelphia v. Kurtz Bros.,* 240 F.Supp. 361 (E.D.Pa.1965). This court has already held above that the sales and/or purchases which establish that the defendant is transacting business within the district do not necessarily have to be related to or connected with the cause of action. Accordingly, Peterson's argument that these were sales of breeder stock rather than broilers is not well taken. Because the sales noted above clearly established that Peterson is transacting business within this district within the meaning of 15 U.S.C. § 22, no consideration need be given the fact that Peterson's salesman was not stationed in Georgia but selected his own place of residence. To the extent that he resided in this district and solicited sales for Peterson in this district, however, it adds support for this court's finding that Peterson is transacting business here.

### H & H Poultry Co., Inc.

H & H Poultry Co. has made numerous purchases totaling approximately $584,206 from Georgia suppliers over the period from 1970 to 1975. Payments for all of these purchases were made to the suppliers' places of business in Georgia. Of these, purchases valued at approximately $312,101 were shipped to H & H from the suppliers in this district while purchases valued at approximately $260,052 were shipped from Salisbury, Maryland, and purchases valued at $12,053 were shipped from Seaford, Delaware. H & H emphasizes that orders valued at over $466,000 were placed not in this district but at the suppliers' places of business in Salisbury, Maryland, or Seaford, Delaware. There are also orders valued at approximately $81,000 which were shipped from Canton, Georgia, and whose orders were placed in either Canton, Georgia or Seaford, Delaware; however, the portion from each cannot be determined.

 H & H contends that purchases are not sufficient, standing alone, to constitute transacting business, citing

cases dealing generally with the "doing of business" or "found" tests. As noted above, the "transacting business" test provided for in 15 U.S.C. § 22 requires less than the "doing of business" or "found" tests. *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *Commonwealth Edison Co. v. Federal Pacific Electric Co.*, 208 F.Supp. 936 (N.D.Ill.1962). This court is of the opinion that the relevant question is whether or not H & H transacts business of a substantial character within the district in the ordinary and usual manner. While there is no singular definitive test for transacting business, the determination is not to be controlled by hair-splitting technicalities. Accordingly, there are many indicia including but certainly not limited to the solicitation of sales, sales and purchases within the district. The greater the contact of the particular transaction with the district, the greater weight such transaction has on the final determination; however, this court will not take the simplistic view that a purchase shipped from this district and paid for in this district is not a valid consideration because the order was placed at one of the supplier's places of business which happened to be outside the district. The answers to the interrogatories reveal that H & H has continuously and regularly done substantial business within this district over the past six years in making numerous purchases. It is particularly important that H & H did not just make random irregular purchases from various suppliers within this district but carried on a regular and continuous course of purchasing of a substantial nature with two suppliers over a long period of time and to a lesser extent with one other supplier for three years.[5] This court is of the opinion that the transactions of H & H over the past six years are sufficient to establish that it is transacting business within this district so as to come within the venue provisions of 15 U.S.C. § 22.

### Tyson Foods, Inc.

Plaintiffs contend that Tyson is subject to suit in this district because (1) it acquired Vantress Pedigree, Inc. which has its facilities in this district; (2) it purchases a substantial amount of breeder stock from Vantress; and (3) a number of officers and employees of Tyson have attended conventions in Atlanta.

The supplemental answers to interrogatories indicate that Tyson has not purchased any breeder stock from Vantress but that any and all purchases

---

**5.** Purchases from the Gainesville Machine Co. of Gainesville, Georgia totalled approximately $448,049 over a six year period with yearly purchases as follows:

| | |
|---|---|
| 1970 | $ 96,387.20 |
| 1971 | 64,126.20 |
| 1972 | 21,920.66 |
| 1973 | 112,863.80 |
| 1974 | 121,818.48 |
| 1975 | 30,935.47 |

Purchases from the General Research Co. of Canton, Georgia totalled approximately $80,967 over a five year period with yearly purchases as follows:

| | |
|---|---|
| 1970 | $ 313.35 |
| 1971 | 2,996.14 |
| 1972 | 21,262.42 |
| 1973 | 1,346.95 |
| 1974 | 55,050.44 |

Purchases from the Wiggins Scales Co. of Atlanta totalled approximately $8,901 for three years with yearly purchases as follows:

| | |
|---|---|
| 1970 | –0– |
| 1971 | 2,200.00 |
| 1972 | 2,740.00 |
| 1973 | –0– |
| 1974 | 3,961.90 |

H & H also had other purchases from the district totalling approximately $46,263, however, these were mostly irregular purchases from separate suppliers and show no continuous course of conduct with any one supplier.

from Vantress were made by Poultry Growers, Inc., a wholly-owned subsidiary of Tyson. There is nothing in the record to disclose that Tyson dictates the daily business affairs of Poultry Growers, Inc. so that the presence or transactions of that subsidiary will render the parent corporation transacting business in the district under 15 U.S.C. § 22. *San Antonio Telephone Co., Inc. v. American Telephone & Telegraph Co.*, 499 F.2d 349 (5th Cir. 1974); *O. S. C. Corp. v. Toshiba America, Inc.*, 491 F.2d 1064 (9th Cir. 1974). There is also nothing of record to indicate that Tyson so controls the daily business affairs of Vantress, its wholly-owned subsidiary which has facilities in this district. This court finds absolutely no merit in plaintiffs' contention that Tyson is subject to suit in this district because some of its officers and employees have attended conventions in Atlanta. That is too tenuous a connection with this district in the absence of some affirmative showing that the cause of action arose out of such conventions. It is not enough to argue that the central thesis of the actions is the NBMA programs. Accordingly, this court determines that venue is not proper as to Tyson Foods, Inc. and service of process on Tyson's agents in Springdale, Arkansas, was thus improper.

### The Federal Company

Plaintiffs seek to establish venue over Federal because of transactions of business in this district of some of Federal's wholly-owned subsidiaries. As noted above, the burden is on the plaintiffs to establish that the subsidiary is essentially the alter ego or agent of the parent corporation and that the parent dictates and controls the daily business affairs of the subsidiary. The fact that the parent has the ability to subject the subsidiary to any degree of control it chooses or that there are some common officers and/or directors of parent and subsidiary is not determinative. *Hayashi v. Sunshine Garden Products, Inc.*, 285 F.Supp. 632 (W.D.Wash.1967), *aff'd*, 396 F.2d 13 (9th Cir. 1968); *Fisher Baking*

*Co. v. Continental Baking Corp.*, 238 F.Supp. 322 (D.Utah 1965). There must be a showing that the parent corporation did, in fact, control, manage, and direct the daily affairs of the subsidiary. *San Antonio Telephone Co., Inc. v. American Telephone & Telegraph Co.*, 499 F.2d 349 (5th Cir. 1974); *O. S. C. Corp. v. Toshiba America, Inc.*, 491 F.2d 1064 (9th Cir. 1974); *Zwingle v. Tyson's Foods, Inc.*, 241 F.Supp. 940 (W.D.Okl.1965).

In the case of the present motion of the Federal Company, this court is convinced that plaintiffs have failed to establish that Federal exercises such direct control of its subsidiaries as to make itself subject to suit in this district on the basis of such subsidiaries' business transactions. The unrefuted affidavit of Mr. W. L. Taylor, Chairman of the Board of Directors of The Federal Company, establishes that the three subsidiaries—Cosby Hodges Milling Co., Dixie Portland Flour Mills, Inc., and Holly Farms Poultry Industries, Inc.—are each separate corporations, separately incorporated and managed and which were independent operating entities at the time of the acquisition of their stock by Federal. The affidavit further establishes that Federal has not involved itself in the daily management of such subsidiaries. While there are some common officers and directors between the parent and subsidiaries, paragraph 13 of Mr. Taylor's affidavit establishes that:

> No person affiliated with The Federal Company is involved in the daily management of Holly Farms Poultry Industries, Inc., or Dixie Portland Flour Mills, Inc., or Cosby Hodges Milling Co. Likewise no person affiliated with any of those subsidiary corporations is involved in the daily management of The Federal Company. The corporations function completely separate from one another.

Upon the basis of the facts of record in this case, this court is convinced that plaintiffs have failed to establish that The Federal Company is transacting business in this district through the activities of its subsidiaries.

Accordingly, venue is not proper as to The Federal Company, and service of process on this defendant at its office in Memphis, Tennessee, was thus improper.

### Stratford of Texas, Inc.

Plaintiffs seek to establish venue over Stratford (1) because Green Thumb Corporation is a wholly-owned subsidiary of Stratford which is transacting business in this district; (2) because Rite-Care was formerly a wholly-owned subsidiary of Stratford, and Rite-Care made purchases in this district; (3) because three Stratford salesmen made four trips into the district from 1972–1974 to sell a cattle feeding program and sold partnership interests in such programs to four residents of the district. After carefully considering the facts of record, this court is convinced that plaintiffs have failed to establish that Stratford exerts such control over the daily affairs of Green Thumb Corp. or of Rite-Care Corp. so as to establish that Stratford is transacting business in this district through the activities of those subsidiaries.

■ As far as the sales of partnership interests in the cattle feeding program, the record discloses that there was one sale in 1971 valued at $5,000; two sales in 1972 with a combined value of $25,000 and one sale in 1973 valued at $5,000. These transactions are totally unrelated to the present suit. Without considering Stratford's contention that these sales do not satisfy the transacting business test because they are in the nature of sales of securities rather than sales of company products, it is clear that such sales took place before the time this action commenced. As noted above, where the transactions sought to be used to establish venue are not related to the cause of action, the defendant must be transacting business in this district at the time the suit was filed. Accordingly, this court finds that venue is not proper as to the defendant Stratford of Texas, Inc., and service of process on Stratford's agents in Houston, Texas, was thus improper.

### DeWitt Farms Corp.

Plaintiffs attempt to establish venue as to DeWitt because it had a wholly-owned subsidiary, DeWitt's Mississippi Hatchery, Inc., with identical officers and directors as DeWitt Farms which made sales within this district valued at $53,000 between January, 1970, and March, 1971, and alternatively claim that venue is proper in this district under 28 U.S.C. § 1391(b) as being the district where the claim arose. In support of this latter contention, plaintiffs rely on the fact that R. E. DeWitt, President of Dewitt Farms, made two trips, one in 1970 and one in 1972, to Atlanta to attend meetings of the NBMA and also attended the Southeastern Poultry show in Atlanta in 1973.

■ It requires no elaboration or detailed reasoning to summarily reject both contentions. By no stretch of the imagination could the sales in question constitute transacting business in this district in light of the discussion of the tests discussed above, with respect to both the parent subsidiary relation and the time frame for the sales to be relevant.

■ As noted in the discussion with respect to Tyson Foods, Inc.'s motion above, absent some affirmative showing that the cause of action arose out of the conventions and meetings attended by Mr. DeWitt, the attendance of such meetings would not subject DeWitt to suit here. It is not sufficient to argue that since the NBMA is alleged to be a mechanism created to effectuate a price-fixing conspiracy, all of its meetings are central to the conspiracy so that attendance at one meeting which was significant in the formulation of the association and attendance at one other meeting would subject DeWitt to suit in this district. The complaints in these actions do not allege that the main vehicle of the alleged conspiracy was any one or more particular NBMA meetings. Ven-

ue is thus not proper as to DeWitt, and service of process on an agent of DeWitt at Nacogdoches, Texas, was improper.

## Burnett Produce Company

██ Burnett is a partnership organized in and pursuant to the laws of the State of Tennessee. Since it is a partnership, the "transacting business" test of 15 U.S.C. § 22 is inapplicable, and if venue in this district is to be proper, Burnett must either reside, be found, or have an agent in this district pursuant to 15 U.S.C. § 15. Plaintiffs contend that Burnett is found in this district because it made 8 sales within this district in 1971 and 1972, totalling approximately $14,000; because it made purchases from this district from 1971 through 1974 totalling approximately $1,100,000; because it made purchases from companies from outside this district with the products shipped from within this district in 1971, 1972, and 1974 totalling approximately $434,000; and because other partnerships which have or had identical partners as Burnett Produce Company have made substantial purchases in this district over the period from 1970 through 1971.

██ While Burnett has substantial contact with this district, mainly through its purchasing activity, it is not found within this district pursuant to 15 U.S.C. § 15. The word "found" as used in that section anticipates that the defendant be present in the district by its officers and agents carrying on the business of the defendant. It "connotes presence and 'continuous local activities' within the District." *Stern Fish Co. v. Century Seafoods, Inc.*, 254 F.Supp. 151, 153 (E.D.Pa.1966); *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *C.C.P. Corp. v. Wynn Oil Co.*, 354 F.Supp. 1275 (N.D.Ill.1973); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252 (E.D.Pa.1968). The 8 sales in 1971–1972 and the substantial purchasing ac-

tivity might render Burnett to be "transacting business" if 15 U.S.C. § 22 were applicable but it is not sufficient for this court to hold that Burnett is "found" within this district. Accordingly, venue is not proper as to Burnett, and the service at its office in Morristown, Tennessee, was improper.

## Perdue Farms, Inc.

Plaintiffs seek to establish venue as to Perdue Farms, Inc. by virtue of transactions within the district of its parent, Perdue Inc., and also by virtue of purchasing activity within the district by Perdue Farms, Inc.

██ Whether or not a subsidiary can be held to be transacting business for venue purposes due to the transactions of its parent [6] as opposed to the rule stated above dealing with holding a parent to be transacting business due to its control of the daily operations of its subsidiary which is subject to venue, this court need not decide because plaintiffs have not established that the subsidiary is the alter ego or agent of the parent or that the subsidiary and parent do not maintain a separate entity. To this end plaintiffs have only shown that the parent and subsidiary have the same post office number and the same telephone number. While these facts may raise some suspicion that the parent and subsidiary are not separate entities, this court is of the opinion that this is not a sufficient showing standing alone.

Having decided that the transactions of Perdue, Inc. cannot be considered in determining whether or not Perdue Farms, Inc. is transacting business within this district, the court must now look to Perdue Farms' own contacts with this district. The record discloses that from 1971 through 1974 Perdue Farms made

---

**6.** Plaintiffs have cited no authority for such proposition.

purchases from companies within this district in the following amounts:

| 1971 | $ 3,002.90 |
| 1972 | 14,093.05 |
| 1973 | 134,040.46 |
| 1974 | 69,252.99 |

Plaintiffs have supplied no breakdown of the number of these purchases or of their origin. As this court noted earlier, in determining whether or not a corporation is transacting business within a district so as to establish venue under 15 U.S.C. § 22, the analysis is not limited to sales but purchases are also a valid consideration. This does not mean, however, that the mere fact that the defendant has made purchases in this district subjects it to suit here, and this is so even if the dollar amounts of such purchases is substantial. The test is, as noted many times above, whether, viewed in the practical, everyday business concept of carrying on business, the defendant transacts business of a substantial character within the district in the ordinary and usual manner. As the present record stands, there is no way to determine the nature of Perdue's transactions with this district. This court is of the opinion that when evaluating purchases to determine whether or not a defendant is transacting business, it is important to consider whether or not the defendant made a single purchase, several purchases, or numerous purchases each year over the period in question and whether there was a regular course of purchases from one or several suppliers in the district. This is true because the test is whether there is an ordinary and continuous business relation within the district. As noted in *School District of Philadelphia v. Kurtz Bros.*, 240 F.Supp. 361 (E.D.Pa.1965), a substantial transaction might not constitute transacting business while continuous small transactions over a period of time might amount to transacting business. For example, in ruling on the motion of H & H Poultry Co., it was important that H & H had continuously made regular and substantial purchases from two Georgia suppliers in this district over a period of six years. Without these, it is doubtful that the other various non-continuous transactions between H & H and other individual suppliers would have been sufficient to find that H & H was transacting business within this district. Since there is presently not sufficient information in the record to rule on Perdue Farms, Inc.'s motion, such ruling is deferred and the plaintiffs are directed to supply additional and clarifying information within 20 days of the date of this order.

For the foregoing reasons, the motions to dismiss of Hudson Foods, Inc., Peterson Farms, and H & H Poultry Co., Inc. are denied; the motions to dismiss of Tyson Foods, Inc., The Federal Company, Stratford of Texas, Inc., DeWitt Farms Corp., and Burnett Produce Company, are granted; and ruling on Perdue Farms, Inc.'s motion is deferred.

C 75–1079 A
C 75–1293 A
C 75–1294 A

Pillsbury Company and Cargill, Inc. move for leave to file an amended answer in these cases to include as an affirmative defense a settlement of the case. There is no response to the motion indicating no opposition pursuant to Local Court Rule 91.2. Accordingly, in view of the rule that leave to amend "be freely given," the motions are granted.

C 74–2204 A

The Federal Company and Townsends, Inc. move to dismiss the complaint of the intervenors in this action for improper venue, insufficient service of process, and lack of personal jurisdiction. For the reasons stated in the discussion under the part of this order dealing with the venue motions of C 74–2454 A, the motion to dismiss of The Federal Company is granted, while ruling on Townsends, Inc. is deferred pending completion of discovery going to the venue motions.

It is so ordered, this the 23rd day of December, 1975.