A. L. BLACK et al.,
Plaintiffs-Appellants,

v.

ACME MARKETS, INC., et
al., Defendants,

First National Stores, Inc.,
Defendant-Appellee.

No. 76–3040

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1977.

Richard E. Green, Hereford, Tex., Joseph M. Alioto, San Francisco, Cal., for plaintiffs-appellants.

Charles I. Thompson, Jr., James D. Coleman, Philadelphia, Pa., A. W. Sorelle, III, Harlow Sprouse, Amarillo, Tex., for First Nat. Stores.

Chester Bedell, John A. DeVault, III, Charles P. Pillans, III, Jacksonville, Fla., for Winn-Dixie Stores, Inc.

Robert H. Smith, Amarillo, Tex., Morgan, Lewis & Bockius, Philadelphia, Pa., for Acme Markets, Inc.

Fred H. Bartlit, Jr., Chicago, Ill., for National Provisioner, Inc.

Jess B. Hawley, Boise, Idaho, for Albertson's Inc.

Gerald S. Cook, Detroit, Mich., for Allied Super Markets, Inc.

Alf R. Brandin, San Francisco, Cal., for Arden Mayfair.

William D. Baker, Phoenix, Ariz., for Circle K Corp.

George B. Haley, Atlanta, Ga., for Colonial Stores.

Before TUTTLE, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from an order granting defendant's motion to dismiss for lack of personal jurisdiction and improper venue. The defendant, First National Stores, is one of a large group of supermarket chains whom the plaintiffs, Texas producers and feeders of cattle, accuse of conspiring together to depress the price of beef in violation of the anti-trust laws.[1] The defendant is a Massachusetts corporation with its headquarters in Somerville. Process was served by substituted service upon the Secretary of State of the State of Texas pursuant to the Texas long-arm statute. Tex. Rev.Civ.Stat.Ann. art. 2031b (Vernon) (1964).

The Secretary of State sent the complaint and summons by certified mail to the defendant in Massachusetts. First National moved to dismiss the complaint for improper venue and lack of personal jurisdiction and to quash service of process. An affidavit, the factual averments of which were not controverted, was submitted in support of the motion to dismiss. Based upon the affidavit and the complaint, the district court ruled that venue in the Northern District of Texas was improper either under the special venue provisions of the antitrust laws, 15 U.S.C. § 15; 15 U.S.C. § 22, or the general venue statute, 28 U.S.C. § 1391(b).

---

1. The cases against the other defendants continued to go forward after the dismissal of the claim against First National Stores. The district court certified the order involved in this appeal pursuant to Rule 54(b). Consequently, the order is properly before us on appeal.

The court also concluded that service pursuant to the Texas long-arm statute was insufficient and did not confer personal jurisdiction over the defendant because First National did not have the requisite minimum contacts with Texas.

## I.  FACTS

■ The affidavit showed that First National does not maintain an office, warehouse or place of business in Texas; that none of its sixteen thousand employees reside in Texas; that it has not appointed an agent for receipt of process in Texas; that it solicits no business and makes no sales in Texas; that it purchases no beef products of any kind from any person in Texas; and that it does not contract with any person located in Texas. In 1975, however, First National purchased aluminum foil from Arrow Industries, Carrollton, Texas, in an amount valued at $374,698 and salad oil, salad dressing and shortening in an amount valued at $1,069,444 from Anderson Clayton Foods, Inc., headquartered in Dallas, Texas.

The salad dressing was purchased through an independent broker located in Massachusetts; the salad oil and shortening were ordered directly. The foil purchases were made by telephone or mail contact with the Texas producer. Additionally, First National purchased $64,529 worth of turkeys from Armour Food Co., Lampassas, Texas. As a result of this purchase and temporary storage of the turkeys in a Dallas warehouse, First National paid $364.55 and $1,929.41 taxes to the county and city of Dallas, respectively.[2] The complaint alleged that the defendants had conspired together to depress beef prices and that this conspiracy had injured the plaintiffs' businesses in Texas.[3]

## II.  PERSONAL JURISDICTION

■ The parties have framed the issue of personal jurisdiction in terms of the prerequisites to jurisdiction over an out-of-state corporation under the Texas long-arm statute. Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964).[4] Both sides, however, par-

---

**2.** The turkey transaction was revealed only in a letter from appellee's counsel to this court. While supportive of appellant's position, details of the transaction are too hazy to permit more than marginal weight to be attached to this transaction.

**3.** In ruling on a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except insofar as controverted by the defendant's affidavit, must be taken as true. In *Edwards v. Associated Press,* 512 F.2d 258 (5th Cir. 1975), we relied upon the plaintiff's complaint to supply the necessary allegation of tortious injury in Mississippi in reversing the district court's dismissal of the suit for lack of personal jurisdiction. There too, an uncontroverted affidavit in support of defendant's motion to dismiss was before the court. *Id.* at 262 n. 8. *Cf. Turner v. Jack Tar Grand Bahama, Ltd.,* 353 F.2d 954, 955–56 (5th Cir. 1965); *see O'Hare Int'l Bank v. Hampton,* 437 F.2d 1137 (7th Cir. 1971); *but see Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974). Professors Wright and Miller, while noting that the pleader bears the burden of establishing personal jurisdiction, state that, "In some cases, however, the allegations do bear on questions of agency or the nexus between the claim or the parties and the forum for purposes of determining the applicability of a long-arm statute." C. Wright and A. Miller, Federal Practice and Procedure § 1363, at 654 (1969).

In such cases, the allegations of the pleading may be considered in ruling on the motion.

**4.** The text of that article reads in pertinent part:

Sec. 3.  Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceeding arising out of any such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

Doing business in state; definition

Sec. 4.  For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed

tially misconceive the question of personal jurisdiction in this case. When a federal statute provides for nationwide service of process, the court has jurisdiction over the person so long as the manner of service is proper and constitutional limits on extra-territorial service are respected. *See, e. g., Hilgeman v. Nat'l Ins. Co. of America,* 547 F.2d 298 (5th Cir. 1977); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1339–44 (2d Cir. 1972).

Section 12 of the Clayton Act, 15 U.S.C. § 22, permits service of process in anti-trust actions in any district of which the defendant corporation is an inhabitant, or wherever it may be found. In the typical case, the defendant might be served with process by a U.S. Marshal or by registered mail at its corporate headquarters, *see* Fed.R.Civ.P. 4(c), 4(e), 4(f); *see also Hilgeman v. Nat'l Ins. Co. of America,* 547 F.2d 298, 301 (5th Cir. 1977); *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 192 (E.D. Pa.1974); *Kramer v. Scientific Control Corp.,* 365 F.Supp. 780, 787 (E.D.Pa.1973); *Emerson v. Falcon Mfg. Co.,* 333 F.Supp. 888 (S.D.Tex.1971); *cf. Chemical Specialties Sales Corp.-Indus. Div. v. Basic Inc.,* 296 F.Supp. 1106, 1109 (D.Conn.1968); *Raul Int'l Corp. v. Nu-Era Gear Corp.,* 28 F.R.D. 368, 371 (S.D.N.Y.1961). In such cases, the requirements of state long-arm statutes are simply irrelevant to the in personam jurisdiction of a federal court.

■ In this case, brought in the Northern District of Texas, service of process was made in the manner prescribed by the Texas long-arm statute. Service pursuant to a state long-arm statute is clearly permissible, even when the cause of action is one under the federal anti-trust laws; purely federal procedures for service have no monopoly in anti-trust actions. *Bd. of City*

*Comm'rs v. Wilshire Oil Co. of Texas,* 523 F.2d 125 (10th Cir. 1975); *Lone Star Package Car Co. v. Baltimore and Ohio Ry. Co.,* 212 F.2d 147, 152 (5th Cir. 1954); *Hitt v. Nissan Motor Co.,* 399 F.Supp. 838, 846–54 (S.D.Fla.1975); *Chemical Specialties Sales Corp.-Indus. Div. v. Basic Inc.,* 296 F.Supp. 1106, 1109 (D.Conn.1968). Just as there are many roads to Rome, there is more than one avenue to personal jurisdiction in anti-trust cases. The route travelled here, from Section 12 of the Clayton Act to the provisions of the state long-arm, is, however, a tortuous one through Rule 4 of the Federal Rules of Civil Procedure.

The first signpost along the road is Rule 4(e). Rule 4(e) provides:

(e) Same: Service Upon Party Not Inhabitant of or Found Within State. Whenever a statute of the United States or an order of court thereunder provides for service of a summons . . . upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. . . .

Fed.R.Civ.P. 4(e).

■ Section 12 of the Clayton Act authorizes extraterritorial service but does not prescribe the mode of service. The final quoted clause of Rule 4(e), prescribing service "in a manner stated in this rule," is therefore, applicable to actions under the anti-trust laws. One manner of service stated in Rule 4 is service in the manner prescribed by Rule 4(d)(7), the next of our statutory signposts.

doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or *the committing of any tort in whole or in part in this State.*
 Delivery of process to Secretary of State; forwarding copy
 Sec. 5. Whenever process against a foreign corporation, joint stock company, association, partnership, or non-resident natural person is

made by delivering to the Secretary of State duplicate copies of such process, the Secretary of State shall require a statement of the name and address of the home or home office of the non-resident. Upon receipt of such process, the Secretary of State shall forthwith forward to the defendant a copy of the process by registered mail, return receipt requested.
 * * * "
[Emphasis added.]

■ Rule 4(d)(7) of the Federal Rules of Civil Procedure specifically permits service "in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." Fed.R.Civ.P. 4(d)(7). The federal rules empower the states to furnish procedures for federal service of process. The fact that the federal government uses state procedures in the service of process illustrates the accommodation of the reciprocal operations of the states and the federal government so important to the vitality of federalism. It is undisputed that service in this case was effected in the *manner* prescribed by Texas law for actions against nonresident corporations. On a plausible reading of Rule 4, then, this is all that is necessary.[5]

It must be admitted, however, that in anti-trust and securities cases, in which service has been made pursuant to state law, some courts have analyzed the provisions of the state long-arm statute in order to determine that the state procedure has been employed in *circumstances* in which a state court would employ that procedure. *Hilgeman v. Nat'l Ins. Co. of America*, 547 F.2d 298 (5th Cir. 1977); *Hitt v. Nissan Motor Co.*, 399 F.Supp. 838, 846–54 (S.D.Fla.1975); *Chemical Specialties Sales Corp.-Indus. Div. v. Basic Inc.*, 296 F.Supp. 1106, 1109–10 (D.Conn.1968). In *Hilgeman* we held that substituted service pursuant to the Alabama long-arm statute for actions arising out of policies of insurance was not proper for claims based on the federal securities laws. *Id.* at 300–01. However, we specifically rejected any implication that "a state's provision for personal jurisdiction over insurance companies can never be used where federal securities claims are asserted." The decision was based "solely on our interpretation of the Alabama statute." *Id.* at 301 n. 5.

■ Even if *Hilgeman* were taken to stand for the broad proposition that a federal plaintiff with a federal claim who employs a state procedure is bound by all the terms and conditions of the state long-arm statute, the district court erred in dismissing this action for lack of personal jurisdiction over First National Stores. We have no doubt that Texas courts would construe section 2031b to reach an out-of-state corporation which had made purchases of products originating in Texas amounting to nearly $1.5 million in a single year and is alleged to have engaged in a conspiracy whose effects would almost certainly be felt by Texas cattle producers.[6] The words of the statute are that "the committing of any tort in whole *or in part*" in Texas is sufficient to constitute "doing business," the predicate for long-arm jurisdiction. Delictual conduct violative of the anti-trust laws may be treated analogously to tortious conduct for these purposes.

■ It is hornbook law that one of the elements of a tort is damage and plaintiffs here have alleged damage within the state of Texas. *See Edwards v. Associated Press*, 512 F.2d 258, 263–65 (5th Cir. 1975) (construing identical Mississippi statute). In *Eyrely Aircraft Co., v. Killian*, 414 F.2d 591,

---

**5.** Rule 4(e) requires that service pursuant to a federal statute or court order authorizing extraterritorial service be made "under the circumstances and in the manner prescribed by the statute or rule." When the federal statute lacks a provision prescribing the manner of service, service is to be made simply "in the manner stated in this rule." This refers back to Rule 4(d)(7) which authorizes service "in the manner prescribed by state law" *without reference to the circumstances required under state law.* Thus, absent a strong affirmative policy of the state precluding use of its procedure in all but a narrow set of circumstances, *see Hilgeman v. Nat'l Ins. Co. of America*, 547 F.2d

298, 300–01 (5th Cir. 1977), extraterritorial federal process pursuant to Section 12 of the Clayton Act might be served in the manner provided by state long-arm statutes, without regard to the circumstances in which the state courts would employ that mode of service. In view of our conclusion regarding the embrace of the Texas long-arm, see text *infra*, we need not decide if this plausible reading of Rule 4 is correct.

**6.** As counsel for the appellees candidly remarked in oral argument, "Even a Philadelphia lawyer knows that a lot of cattle come from Texas."

598–601 (5th Cir. 1969), we held that the Texas long-arm reached an Oregon defendant who sold an amusement ride to an Illinois concern which resold it to a North Dakota concern which brought it to Texas where it injured the plaintiff. Because the wrongful act outside Texas produced reasonably foreseeable harm within Texas, personal jurisdiction was proper. *Id.*[7] In *Jetco Electronic Industries v. Gardiner*, 473 F.2d 1228, 1232–33 (5th Cir. 1973), we held that section 2031b permitted the exercise of jurisdiction over an Arizona defendant which had negligently tested plaintiff's product in Arizona and had permitted another Arizona company to publish the test results to the detriment of the business of the Texas plaintiff. The Texas case law indicates that this construction of section 2031b is correct, *see Hoppenfeld v. Crook*, 498 S.W.2d 52, 56 (Tex.Civ.App.1973) (tort committed in part in Texas where misrepresentation made in New York but reliance occurred in Texas); *Garza v. Hrubetz & Co.*, 496 S.W.2d 143 (Tex.Civ.App.1973). Moreover, under the *Eyrely* and *Jetco* holdings, there is no constitutional barrier to the assertion of personal jurisdiction in this case. *Jetco Electronic Industries v. Gardiner*, 473 F.2d 1228, 1234–35 (5th Cir. 1973); *Eyrely Aircraft Co. v. Killian*, 414 F.2d 591, 595–99 (5th Cir. 1969); *see Hitt v. Nissan*

7. In *Eyrely*, we also noted the existence of certain other commercial contacts between the defendant and the state of Texas. These contacts were unrelated to the transaction which gave rise to the plaintiff's injury. 414 F.2d at 594. To the extent that these contacts were necessary to the court's holding, *id.* at 597, they are present in this case as well in the form of First National's Texas purchases.

8. There is no necessity in the present case to address the vexed question of the applicability of the *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), doctrine to the personal jurisdiction of federal courts sitting in federal question cases brought under statutes providing for worldwide service of process. Some courts have implied that the *International Shoe* limits are inapplicable, *Kramer v. Scientific Control Corp.*, 365 F.Supp. 780, 787 (E.D.Pa.1973); *Stern v. Gobeloff*, 332 F.Supp. 909, 912–14 (D.Md.1971); *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 198–205 (E.D.Pa.1974). The Supreme Court in *United States v. Scophony Corp.*, 333

*Motor Co.*, 399 F.Supp. 838, 852–54 (S.D.Fla. 1975); *see generally Wilkerson v. Fortuna Corp.*, 554 F.2d 745, 749–50 (5th Cir. 1977).[8]

### III. VENUE

Section 12 of the Clayton Act provides that venue in an anti-trust action is proper "not only in the judicial district whereof it [the defendant corporation] is an inhabitant, but also in any district wherein it may be found or transacts business . . . ;" 15 U.S.C. § 22. The only question to which we need address ourselves in this case is whether the defendant has "transacted business" in the Northern District of Texas. Our review of the authorities convinces us that it has.

The starting point for analysis of the "transacting business" portion of Section 12 is *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). There the Court established the major premise of the jurisprudence under Section 12, i. e. that the "transacting business" test was added to Section 12 in order to relieve

> the injured person from the necessity of resorting for the redress of wrongs committed by a non-resident corporation, to a district, however distant, in which it resides or may be 'found'—often an insu-

U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), refused to address the question of the outer limits of Congress's power to compel a defendant to defend in a distant forum, *id.* at 804 n. 13; 68 S.Ct. at 860 n. 13, but noted that "traditional notions of fair play and substantial justice," citing *International Shoe*, were not offended in the anti-trust action then before the Court. A decision of this Circuit early in the *International Shoe* era indicates that the *Shoe* fits and is to be worn by federal courts perambulating through anti-trust cases. *Lone Star Package Car Co. v. Baltimore and Ohio Ry. Co.*, 212 F.2d 147, 155 (5th Cir. 1954). In any event, no one has suggested that the personal jurisdiction of federal courts is to be gauged by more restrictive constitutional standard than that applicable to state courts. State long-arms must fit into an *International Shoe*; there is no justification for forcing federal feet into a glass slipper too narrow and fragile to support the weight of the policies underlying the statutory privilege of worldwide service.

perable obstacle—enabling him to institute the suit in a district, frequently that of his own residence, in which the corporation in fact transacts business, and bring it before the court by the service of process in a district in which it resides or may be 'found'.

273 U.S. at 373, 47 S.Ct. at 403. Section 12 of the Clayton Act, thus, manifests a congressional belief that forum shopping plays a role along with product shopping in insuring the vitality of a competitive market.

■ The Court later summarized the effect of the *Eastman Kodak* case on the law of anti-trust venue. "The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue." *United States v. Scophony Corp.*, 333 U.S. 795, 807, 68 S.Ct. 855, 862 (1948). "Hairsplitting legal technicalities" were no longer to be permitted to defeat the remedial purposes of Section 12. *Id.* at 808, 68 S.Ct. at 862. In the years since the *Scophony* case, the lower courts have developed a number of principles derived from the *Scophony* test and relevant to the case at bar. First, it has been held that purchasing activity as well as sales activity constitutes the transaction of business. *Bd. of County Comm'rs v. Wilshire Oil Co. of Texas*, 523 F.2d 125, 129–30 (10th Cir. 1975); *In re Chicken Anti-Trust Litigation*, 407 F.Supp. 1285, 1292 (N.D.Ga.1975); *Fashion Two Twenty Inc. v. Steinberg*, 339 F.Supp. 836

(E.D.N.Y.1971); *Crusader Marine Corp. v. Chrysler Corp.*, 281 F.Supp. 802, 804 (E.D. Mich.1968). Furthermore, the substantiality of the business transacted is to be judged from the point of view of the average businessman and not in proportion to the sales or revenues of the defendant. *Green v. U. S. Chewing Gum Mfg. Co.*, 224 F.2d 369 (5th Cir. 1955); *In re Chicken Anti-Trust Litigation, supra*, 407 F.Supp. at 1291.[9] Finally the purchases and/or sales which constitute the transaction of business need not be connected to the subject matter of this suit. In *re Chicken Anti-Trust Litigation, supra*, 407 F.Supp. at 1292; *McCrory Corp. v. Cloth World, Inc.*, 378 F.Supp. 322 (S.D.N.Y. 1974); *National Auto Brokers Corp. v. General Motors Corp.*, 332 F.Supp. 280 (S.D.N.Y.1971); *Crusader Marine Corp. v. Chrysler Corp.*, 281 F.Supp. 802 (E.D.Mich.1968); *United States v. Burlington Industries, Inc.*, 247 F.Supp. 185 (S.D.N.Y.1965).

■ Here the defendant's own affidavit proves the propriety of venue under Section 12 given these principles. The defendant made nearly $1.5 million worth of purchases from the Northern District of Texas in a single year. Of this total, approximately $375,000 worth of aluminum foil was purchased directly from the Texas manufacturer, Arrow Industries. While this might be a small amount for a corporation with yearly purchases of $750,000,000, it certainly represents purchases significant to the ordinary businessman today.[10]

**9.** In a major recent case involving multiple defendants, venue was found proper where one defendant had made sales totalling $239,000 and purchases totalling $274,000 over a four-year period, *In re Chicken Anti-Trust Litigation, supra*, 407 F.Supp. at 1294–95, where a second defendant had made sales averaging $130,000 over a four year period, *id.* at 1295, and where a third defendant had made purchases of $584,000 over the course of six years, *id.* at 1295–96. For another relatively recent case in which even smaller dollar amounts of business were held sufficient to establish venue, see *State of Illinois v. Harper and Row Publishers*, 308 F.Supp. 1207 (N.D.Ill.1969).

**10.** While this purchase alone is, thus, sufficient to support venue, it need not stand alone in the circumstances of this case. First National Stores made purchases totalling over $1 million

from Anderson Clayton Foods, Inc., a corporation with its headquarters in Dallas and a plant in Sherman, Texas. An unspecified portion of the $1 million is accounted for by purchases of shortening and salad oils from Anderson Clayton. First National ordered these products directly from Anderson Clayton's headquarters in Dallas. These purchases are unquestionably supportive of venue in this case. The remainder of the $1 million is accounted for by purchases of salad dressing. While these purchases were placed through a broker in Massachusetts, they are not without legal relevance. To permit use of a broker to defeat venue when the defendant knows that purchases are to be made from a particular district, as First National apparently did here, would be to resurrect the "hairsplitting legal technicalities" which *Scophony* put at rest. If the opposite rule were adopted, a defendant could defeat venue based

Venue was proper in the Northern District of Texas.[11]

## CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing the plaintiffs' claim against First National Stores for lack of personal jurisdiction and improper venue is reversed and the case is remanded.

REVERSED and REMANDED.

upon purchases everywhere by the simple expedient of making all its purchases through a broker. Thus, while courts must be wary of attributing to one entity the activities of another for purposes of establishing venue, *see San Antonio Telephone Co. v. American Telephone and Telegraph Co.*, 499 F.2d 349 (5th Cir. 1974), purchases through a broker may be considered in this case.

11. In view of our conclusion that these purchases constituted the "transaction of business" under Section 12, we need not decide whether the consummation of a tort constitutes the transaction of business for venue purposes under Section 12 as distinct from personal jurisdiction purposes under the Texas long-arm statute.