**Mrs. Dorothy EDWARDS, as personal representative of the Estate of Harry Edwards, A. W. Mixter, Individually and as personal representative of the Estate of John Alfred Mixter, Audrey Yates, Individually and as personal representative of the Estate of Allen Reader, Bashir Ahmed, Individually and as personal representative of the Estate of Javed Ahmed, Fazal Elahi, Individually and as personal representative of the Estate of Javed Ahmed, and Fazal Elahi, Individually and as personal representative of the Estate of Ghdlam Sadiq**

v.

**GULF MISSISSIPPI MARINE CORP., Gulf Mississippi International, S. A., Gulf International Marine Corp., International Marine Service Inc., and Pott Industries, Inc.**

Civ. A. No. H–75–1345.

United States District Court, S. D. Texas, Houston Division.

April 28, 1978.

Arthur L. Schechter, Schechter & Shelton, Inc., Houston, Tex., for plaintiffs.

John K. Meyer, Hinds & Meyer, Houston, Tex., for defendants.

## MEMORANDUM and ORDER:

SINGLETON, District Judge.

Plaintiffs in this lawsuit are the personal representatives of five deceased persons who died when the "Glenda Guidry" sank approximately twenty-five miles off the coast of Iran on or about December 5, 1975. This action is maintained under the Jones Act, 46 U.S.C. § 688, the Death on the High Seas Act, 46 U.S.C. § 761, and general maritime law, against five corporate defendants: Pott Industries, Inc. (hereinafter Pott), Gulf Mississippi Marine Corporation (hereinafter GMMC), Gulf International Marine Corporation (hereinafter GIMC), Gulf Mississippi International, S.A. (hereinafter GMISA), and International Marine Services, Inc. (hereinafter IMS).

Four of the defendants, Pott, GMMC, GMISA, and GIMC have filed motions to quash service and to dismiss for lack of personal jurisdiction over these defendants. Having carefully examined the applicable law and extensive briefs submitted to the court on this question, the court finds that defendants' motions should be denied.

At all times material to this action, the vessel, "Glenda Guidry," was operated by GIMC, a Panamanian corporation that is owned 50 percent by GMISA and 50 percent by IMS, Inc., a Panamanian corporation. The owner of the "Glenda Guidry" was GMISA, also a Panamanian corporation whose capital stock is in turn owned 100 percent by GMMC, a Louisiana corporation with principal offices in New Orleans, Louisiana, and with offices in Houston, Texas. Likewise, Pott, whose place of incorporation and principal place of doing business is St. Louis, Missouri, owns 100 percent of the capital stock of GMMC.

The first issue to be resolved is whether the Texas long arm statute is applicable in this case. See Tex.Rev.Civ.Stat.Ann. art. 2031b (1964). Plaintiff's contention is that article 2031b is not applicable since the instant action is grounded on federally created rights and not on diversity of citizenship.

It is now well settled that the power of a federal court to exercise jurisdiction over nonresident defendants in a *diversity* case is governed by the law of the state in which the federal court sits, with "federal law" applied only for determining whether the state's assertion of jurisdiction violates constitutional guarantees. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir. 1974); *Gordon v. John Deere Company*, 466 F.2d 1200 (5th Cir. 1972); *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir. 1963). However, in cases arising under the Constitution, laws, or treaties of the United States, the Fifth Circuit has recognized that the limitations placed upon the courts of the state do not apply to a federal court sitting in that state. *Lone Star Package Car Co. v. Baltimore & O. R. Co.*, 212 F.2d 147, 154 (5th Cir. 1954); *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir. 1977). However, as noted in *Black*, if the manner of service is not provided for under federal procedures, state procedures will have to be resorted to. This "anomaly" of having to resort to state statutory procedures in federal question cases has been widely recognized. *See Stanley v. Local 926 of Int. U. of Op. Eng. of AFL–CIO*, 354 F.Supp. 1267, 1270 n. 2 (N.D.Ga. 1973); *Hartley v. Sioux City & New Orleans Barge Lines, Inc.*, 379 F.2d 354, 356 n. 2 (3d Cir. 1967); *Gkiafis v. Steamship Yiosonas*, 342 F.2d 546, 549 (4th Cir. 1965). Therefore, the applicability of article 2031b in federal-question cases will turn on the mode of service available in any given case.

Service in this case was executed pursuant to both article 2031b, section 3, and Rule 4(d)(3) of the Federal Rules of Civil Procedure. In addition to serving GMMC under Rule 4(d)(3), plaintiff served Pott, GMISA and GIMC under Rule 4(d)(3) through GMMC, the propriety of which will be discussed below. In order for service to be effective under Rule 4(d)(3) in this case, the agent served must meet the tests of a

"managing agent." Fed.R.Civ.P. 4(d)(3). The Fifth Circuit has held in *Lone Star Package Car Co. v. Baltimore & O. R. Co.*, *supra* at 152, that if a "corporation's business is so substantial as to render the corporation amenable to suit in the state, its principal agent in charge of activities within that state meets the test of a 'managing agent.'" In this case, GMMC has admitted that it is subject to the personal jurisdiction of the court due to a recent opening of an office in Houston, Texas, and that service was effected on GMMC's agent at that office; therefore, service was effectively executed under Rule 4(d)(3). Defendant's Reply Brief at 4. Further, as to GMMC, service pursuant to article 2031b would not be necessary because a federal mode of service is prescribed, and its requisites are met. *See also Koupetoris v. Konkar Intrepid Corp.*, 535 F.2d 1392, 1395 (2d Cir. 1976); *Fraley v. Chesapeake & Ohio Railway Co.*, 397 F.2d 1, 4 (3d Cir. 1968); *Hartley v. Sioux City & New Orleans Barge Lines, Inc.*, 379 F.2d 354, 356 (3d Cir. 1967).

■ Having established proper personal jurisdiction over GMMC, there remains the issue of whether service on GMMC pursuant to Rule 4(d)(3) was also effective service for Pott, GMISA, and GIMC based on the relationship between the parent and subsidiary corporations. The following diagram illustrates the relationship of stock ownership among the corporations in this case.

Further, there are interlocking directorships among the defendant corporations;

however, the foregoing only constitutes the initial inquiry. The plaintiff has demonstrated further that the insurance manager of GMMC, Ralph A. Vacarro, Jr., is charged with the responsibility of placing insurance on all companies in which GMMC has an interest, *i. e.* GMISA and GIMC. All business concerning insurance is therefore handled through GMMC. With reference to the sinking of the "Glenda Guidry," the final insurance payment of $300,000 for property damage was handled through GMMC. A GMMC automobile insurance policy includes as named insureds Pott, GMISA, and GIMC, with all claims arising from the policy administered by GMMC.

A pension plan established for GMMC also includes by its terms GMISA. The plan was once extended to GIMC to allow two former employees of GIMC to participate in the benefits. GMISA is shown to have no employees and no payroll, its purpose being to hold title to vessels, with GIMC operating vessels leased from GMISA. A noncompetition agreement exists between GMISA and GIMC, entered into in 1969, the effect of which is to restrict the operations area of GIMC. The charter agreement entered into between GMISA and GIMC as to the vessel "Glenda Guidry" had directed payments to be made to the "Owner" at a post office box in Louisiana, the headquarters of GMMC.

Gary Duwayne Pope, vice president of GMMC, has signature authority on all bank accounts of GMISA, with statements of the accounts and balances being received by him. Advertising for Pott, GMMC, and GIMC is all managed centrally through GMMC. The advertising, which appears in four nationally distributed trade publications, depicts GMMC and GIMC as part of the "Gulf Fleet," and as subsidiaries of Pott.

These facts demonstrate that the operations of GMISA and GIMC are significantly integrated with those of GMMC to the extent that the court finds their corporate separateness should be disregarded.[1]

1. *See Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Turner v. Jack Tar Grand Bahama, Ltd.*, 353 F.2d 954 (5th Cir. 1965); *Murdock v. Volvo of America Corp.*, 403

The evidence submitted, however, has not shown that Pott's relationship with GMMC could be similarly characterized. In view of the foregoing, service on GMMC was also effective service for GMISA and GIMC, but not effective for Pott.

As Pott cannot be served directly under Rule 4(d)(3) because it had no agent for service within our jurisdiction, there consequently is no federal procedure whereby Pott can be served. However, as stated in *Black v. Acme Markets, Inc.*, 564 F.2d 681, 685 (5th Cir. 1977), if the manner of service is not provided for under federal procedure in cases arising under the Constitution, laws, or treaties of the United States, state procedures may be resorted to under Rule 4(e) of the Federal Rules of Civil Procedure.[2]

Rule 4(e) empowers the federal courts to employ state procedures for service of process. As stated above, Pott was served pursuant to article 2031b, section 3, so it must be determined whether Pott is thereby amenable to process. The statute provides in pertinent part:

> For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation . . . shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State . . . . .

Tex.Rev.Civ.Stat.Ann. art. 2031b, § 4 (1964). The Fifth Circuit has recognized that article 2031b represents an effort to reach as far as the federal constitutional require-

ments of due process will permit. *Products Promotions, Inc. v. Cousteau*, 495 F.2d 483, 491 (5th Cir. 1974); *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847, 852–53 (5th Cir. 1966). In *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977), the court stated that "such a construction is desirable in that it allows the courts to focus on the constitutional limitations of due process rather than to engage in technical and abstruse attempts to consistently define 'doing business.'" Pott was clearly "doing business" within the state of Texas in that it participated in insurance and advertising contracts executed within the state.

The question thus turns on federal constitutional requirements of due process. Bearing in mind that this action arises under the statutes of the United States, it should be noted that in *Time, Inc. v. Manning*, 366 F.2d 690, 694 (5th Cir. 1966), the court stated: "[a]lthough the propriety of service issuing from a federal court need not necessarily be tested by the same yardstick as is the constitutional limitation upon service of process from a state court, the latter standard provides a helpful and often-used guideline." In *Cousteau, supra* at 494, the court recognized that relevant decisions have established a dual test for determining due process considerations:

> First, "there must be some minimum contact with the state which results from an affirmative act of the defendant." Secondly, "it must be fair and reasonable to require the defendant to come into the state and defend the action."[3]

---

F.Supp. 55 (N.D.Tex.1975); *Reul v. Sahara Hotel*, 372 F.Supp. 995 (S.D.Tex.1974); *Frito Lay, Inc. v. Proctor & Gamble Co.*, 364 F.Supp. 243 (N.D.Tex.1973); *Bland v. Kentucky Fried Chicken Corp.*, 338 F.Supp. 871 (S.D.Tex.1971); *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex.1975).

**2.** The court in *Black v. Acme Markets, Inc.*, 564 F.2d 681, 685 n. 5, intimated without deciding that Fed.R.Civ.P. 4(d)(7) could be resorted to when necessary "without reference to the circumstances required under state law." *See Hilgeman v. Nat'l Ins. Co. of America*, 547 F.2d 298, 301 n. 5 (5th Cir. 1977). *Cf. Time, Inc. v.*

*Manning*, 366 F.2d 690, 693 (5th Cir. 1966). However, due to the embrace of the long arm statute in Texas with reference to the facts of this case, the question will not have to be approached. *See also* note 1, *Navarro v. Sedco, Inc.*, 449 F.Supp. 1355 (S.D.Tex.1978).

**3.** As noted in *Cousteau* at 494 n. 17, various other courts have established similar tests in considering due process questions, which are equally helpful in making appropriate rulings. *E. g., Hearne v. Dow-Badische Chem. Co.*, 224 F.Supp. 90, 99 (S.D.Tex.1963); *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966).

In the case at bar, it is clear that Pott had such minimum contacts with the forum as would not offend due process considerations. As stated in *Cousteau, supra* at 495:

[T]he number of the defendant's contacts with the forum state is not, of itself controlling. "[V]ery little purposeful activity within a state is necessary to satisfy the minimum contacts requirement," although "we have . . . unequivocally required *some* activity by the defendant . . . ." [citation omitted] As important as the existence of some contacts with the forum is that those contacts support an inference that the nonresident defendant purposefully availed himself of the benefits of conducting business in the forum. [citations omitted]

By entering into insurance and advertising contracts within the forum, the enforcement and protection of its rights under the contracts might depend on the laws of Texas. Further, as ruled in *Wilkerson v. Fortuna Corp.,* 554 F.2d 745, 750 (5th Cir. 1977), "a non-resident may be required to defend an action in state court even though the suit bears no relation to the activities deemed necessary and sufficient to constitute minimum contacts." It is enough to show that Pott's contacts with the forum were linked to its endeavors which gave rise to the cause of action.[4]

As to the second test, under the circumstances it would be fair and reasonable to require Pott to defend the action in this court. In weighing this consideration, no single constitutional test has been formulated by the courts, as each case must be decided on its own facts. *Cousteau, supra* at 499. In view of the finding that this court will exercise personal jurisdiction to litigate the rights and liabilities of GMMC, GMISA, GIMC and the plaintiffs, it would not offend traditional notions of "fair play and substantial justice" to require Pott, who has been found to do business in this state, to litigate the suit within this forum.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that the motions to quash service and to dismiss of defendants Pott Industries, Inc., Gulf Mississippi Marine Corporation, Gulf International Marine Corporation, and Gulf Mississippi International, S.A. be, and the same hereby are, DENIED.

---

4. **4.** *See* this court's recent holding in *Navarro v. Sedco, Inc.,* 449 F.Supp. 1355 (S.D.Tex.1978).