**JOHN SCOTT, INC. and John Scott International, Inc., Plaintiffs,**

v.

**MUNFORD, INC. and Asian Arts, Inc., Defendants.**

No. 87–8294–Civ.

United States District Court,
S.D. Florida,
Miami Division.

Oct. 1, 1987.

Caldwell & Pacetti, John S. Wilbur, Jr., Palm Beach, Fla., for plaintiffs.

Munford, Shuts & Bowen, Amy S. Ruben, West Palm Beach, Fla., Mershan, Sawyer, Johnston, Dunwoody & Cole, Jeffrey R. Surlas, Miami, Fla., for defendants.

## MEMORANDUM DECISION

SCOTT, District Judge.

This cause is before the Court on Defendant's, ASIAN ARTS, INC., Motion to Dismiss For Lack of Personal Juridiction and to Quash Service of Process. Plaintiffs, JOHN SCOTT, INC. and JOHN SCOTT INTERNATIONAL, INC., (hereinafter collectively, "JOHN SCOTT"), a Florida corporation, are suing MUNFORD, INC., (hereinafter, "MUNFORD"), a Georgia company, and ASIAN ARTS, INC., (hereinafter, "ASIAN ARTS"), a Philippine company partially owned by MUNFORD, for alleged breach of a contract for the purchase of rattan furniture manufactured by ASIAN ARTS in the Philippines.

### 1. PERSONAL JURISDICTION

The power of this Court to entertain personal jurisdiction in this diversity action over a foreign defendant (ASIAN ARTS) hinges on two questions. Initially, the Florida long arm statute must confer jurisdiction. Secondly, the exercise of such jurisdiction may not offend traditional notions of due process. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir.1974).

### A. The Florida Long Arm Statute

Procedurally, JOHN SCOTT must first allege sufficient facts in the complaint in support of long arm jurisdiction. ASIAN ARTS must then make a *prima facie* showing of the inapplicability of the long arm statute. If this is done, JOHN SCOTT is required to substantiate his claim with affidavits or other competent proof. *Polskie Linie Oceaniczne v. Seasafe Transport,* 795 F.2d 968, 972 (11th Cir. 1986) (*citing Electro Engineering Products Co. v. Lewis,* 352 So.2d 862 (Fla.1977)).

JOHN SCOTT alleges in his responsive Motion that personal jurisdiction exists under Section 48.193(1)(a) and (1)(g) of Florida Statutes. Personal jurisdiction exists when any person, who personally or *through an agent,* either carries on a business in Florida or breaches a contract by failing to perform acts required to be performed in Florida. Fla.Stat.Ann. § 48.193(1)(a), (g).

The issue of personal jurisdiction over ASIAN ARTS is largely controlled by whether MUNFORD is regarded as ASIAN ARTS's agent. MUNFORD is licensed to conduct business in Florida, has an agent in Florida for the purpose of service of process and does not object to personal jurisdiction in Florida. Thus, if MUNFORD is deemed ASIAN ARTS's agent, then the only remaining issues would be the constitutional considerations and service of process itself.

Service of the proper agent of a parent corporation can constitute valid service and confer personal jurisdiction. *Edwards v. Gulf Mississippi Marine Corp.,* 449 F.Supp. 1363 (S.D.Tex.1978). A mere parent-subsidiary corporate relationship, however, does not establish the necessary agency relationship. *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336–37, 45 S.Ct. 250, 251–52, 69 L.Ed. 634 (1925). In order to allow service on a subsidiary company through a parent, one must establish a sufficient agency relationship or that the two corporations are not really separate entities. *Allan v. Brown & Root, Inc.,* 491 F.Supp. 398, 403 (S.D.Tex.1980).

Under Florida law, the question of agency is an issue of fact and the burden is on the plaintiff to establish a *prima facie* case of its existence. *Product Promotions Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir. 1974). The existence of an agency relationship is determined by the trier of fact where its resolution depends on inferences to be drawn from the facts adduced. *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1522 (11th Cir.1985). All relevant facts and circumstances may properly be considered.

The evidence of the existence of an agency relationship between ASIAN ARTS and MUNFORD is as follows:

1. MUNFORD owns 3,000 of 10,000 outstanding shares of stock in ASIAN ARTS. (Flores affidavit).

2. ASIAN ARTS received financing from MUNFORD for the purposes of supplying rattan furniture to JOHN SCOTT. (Carrol affidavit).

3. James Cassels and Robert Carr were employees of ASIAN ARTS and were paid by MUNFORD at all times relevant to this dispute. ASIAN ARTS was to reimburse MUNFORD. (Carrol affidavit).

4. MUNFORD's Annual Report makes reference to ASIAN ARTS as "MUNFORD, INC.'s own plants in the Philippines," and to "its manufacturing plants in Lebu City, the Philippines."

5. MUNFORD's Report To Shareholders refers to ASIAN ARTS as "the Company's much larger operation in the Philippines."

6. An ASIAN ARTS representative met with a representative of JOHN SCOTT in Florida to negotiate an agreement for the sale of its rattan furniture to be shipped into Florida for resale by JOHN SCOTT in Florida. (Bain deposition).

7. Numerous correspondances, telexes and telephone calls were exchanged in connection with the alleged contract. (Bain deposition).

8. Purchase orders were sent to ASIAN ARTS from JOHN SCOTT in Florida and payment was to be guaranteed by a $300,000 letter of credit on a Florida bank. (Bain deposition).

9. MUNFORD may have acted on behalf of ASIAN ARTS in attempting to renegotiate prices of the alleged contract. (Memo from Carroll to Mr. Munford).

10. MUNFORD may have considered itself contractually obligated to JOHN SCOTT through ASIAN ARTS. (Memo from Carroll to Mr. Munford).

11. MUNFORD, through its employee Mr. Carroll, participated on behalf of ASIAN ARTS in discussions with JOHN SCOTT concerning "ninety-day payment terms in the original deal." (Memo from Carrol to Mr. Munford).

12. Mr. Carroll called Mr. Munford to "come up with other options" for resolving the contractual dispute with JOHN SCOTT. (Memo from Carrol to Mr. Munford).

13. Mr. Carroll, as agent for ASIAN ARTS, had the power, and did exercise the power, to review all terms of the contract, including credit terms. (Bain deposition).

14. MUNFORD initiated contact in Florida with JOHN SCOTT's Florida bank concerning credit and involved itself in negotiations concerning prices, deliveries, trade shows, deadlines and credit. (Bain deposition).

The Court finds that the aforementioned facts establish a *prima facie* case of an agency relationship between MUNFORD and ASIAN ARTS for the purposes of jurisdiction.

### B. Due Process Concerns

[5] Due process requires that an out of state corporation have sufficient contacts with a state before that state may assert personal jurisdiction over such corporation. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The exercise of jurisdiction may "not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158 (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

Several factors must be analyzed in determining whether the assertion of jurisdiction transcends fundamental precepts of due process. These are

the burden on the defendant, the interests in the forum state, and the plaintiff's interest in obtaining relief. [The court] must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal Ind. Co., Ltd. v. Superior Court of California,* —— U.S. ——, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987)

(*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (citations omitted)). *Asahi*, a case dealing with due process in an international context, further stated that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 107 S.Ct. at 1034.

The extent of ASIAN ARTS's activities in Florida is germane to the method of asserting personal jurisdiction. Where a defendant's activities within the forum state are not systematic and continuous, personal jurisdiction "depends on the relationship between the cause of action on the one hand and the nature and quality of defendant's activities on the other hand." *Rubaii v. Lakewood Pipe of Texas, Inc.*, 695 F.2d 541 (11th Cir.1983) (*citing McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). Because ASIAN ARTS's contacts with Florida are clearly not continuous or systematic, jurisdiction must be founded on those contacts relating to this action.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), although not dealing with a company from a foreign country, is helpful in resolving this issue. In *Burger King*, a Michigan resident entered into a franchise agreement with a Florida corporation, through a Michigan office, for the operation of restaurants in Michigan. In addition to Burger King being a Florida corporation, the contract required payments to be made in Florida. The Court held that personal jurisdiction in Florida over the Michigan resident did not violate any notion of due process. Justice Brennan stated that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* 105 S.Ct. at 2182 (*citing Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). Justice Brennan went on to discuss a state's " 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* at 2183.

As outlined in the preceding section, ASIAN ARTS has a significant connection to Florida. An ASIAN ARTS representative traveled to Florida to negotiate an agreement for goods to be sold and shipped to JOHN SCOTT in Florida.[1] Numerous telexes, correspondances and telephone calls were exchanged during this negotiation process. In addition, the contacts of ASIAN ARTS's agent MUNFORD, whose agency relationship has been established by *prima facie* evidence, may be attributed to ASIAN ARTS for the purposes of satisfying due process. *Pesaplastic C.A. v. Cincinatti Milacron Co.*, 750 F.2d 1516, 1522 (11th Cir.1985). MUNFORD's substantial activities in Florida include, among others, a meeting in Florida in late October, a number of months after the meeting between JOHN SCOTT and ASIAN ARTS, between JOHN SCOTT and MUNFORD. At this meeting the corporate representatives discussed credit, production schedules and shipping schedules. (Bain deposition). When imputed to ASIAN ARTS, such contacts are sufficient to confer jurisdiction within the meaning of due process.

The Court concludes, after a careful application of the factors enunciated in *World-Wide Volkswagen* and *Asahi* to the contacts relating to this action of ASIAN ARTS and those of MUNFORD as its agent, that this Court's jurisdiction over

---

**1.** Such a meeting in the forum, *by itself*, is enough to confer personal jurisdiction over companies from foreign countries if the meeting involves significant negotiations of important terms of a contract. *Sea Lift, Inc. v. Refinadora Costarricense*, 792 F.2d 989, 993 (11th Cir.1986) (*citing Neiman v. Rudalf Wolf & Co.*, 619 F.2d 1189, 1194 & n. 5 (7th Cir.1980)). The Court need not inquire into the significance of the negotiations during the meeting in Miami because of JOHN SCOTT's *prima facie* showing of an agency relationship between MUNFORD and ASIAN ARTS and the evidence of other contacts with Florida.

ASIAN ARTS does not violate any of the fundamental precepts of due process.

### 2. SERVICE OF PROCESS

In contesting ASIAN ARTS's Motion To Quash Service, JOHN SCOTT has presented evidence of attempted service by five separate methods. These are:

1. SCOTT's counsel employed a process server to serve ASIAN ARTS by serving MUNFORD. Service was to be accomplished by serving MUNFORD's registered agent, CT Corp., in Florida. CT Corp refused service on MUNFORD as agent for ASIAN ARTS. (Lamar affidavit).

2. SCOTT's counsel employed a court appointed process server, Ann Clanton, who personally appeared at MUNFORD's principle place of business and dropped off a summons and complaint with Kay Averett, a legal secretary employed by MUNFORD, as alleged agent for ASIAN ARTS. (Clanton affidavit).

3. SCOTT's counsel employed another process server, Don Nueun, who personally served a summons and complaint on James Carroll, Vice President and Comptroller for MUNFORD, as alleged agent for ASIAN ARTS. (Nueun affidavit).

4. SCOTT's counsel sent a summons and complaint by registered mail, return receipt requested, with a notice and acknowledgment form pursuant to Fed.R. Civ.P. 4(c)(2)(c)(ii), to ASIAN ARTS at its principle place of business in the Philippines. The return receipt postcard came back signed by ASIAN ARTS, but the notice and acknowledgment form was not returned. (Wilbur affidavit).

5. SCOTT's counsel requested the Court's clerk to send a summons and complaint by registered mail with return receipt requested to ASIAN ARTS's principle place of business in the Philippines. The clerk, Barbara Selvivo, directed Rita Glidewell, a paralegal employed by SCOTT's counsel, to pick up and mail the documents. Ms. Glidewell complied. (Glidewell affidavit).

Based on the Court's finding that JOHN SCOTT has demonstrated a *prima facie* case of an agency relationship between MUNFORD and ASIAN ARTS, and in light of the aforementioned facts, the Court concludes that service of process on James Carroll, an officer of MUNFORD, as agent of ASIAN ARTS was proper. (Nueun affidavit). Accordingly it is hereby

ORDERED and ADJUDGED that ASIAN ARTS's Motion To Dismiss and to Quash Service of Process is DENIED.